Brassard, J.
Plaintiff Leah Loftis brought this action seeking damages against Jordan Marsh Stores Corporation (“Jordan Marsh”), Equitable Real Estate Investment, Inc., Liberty Mutual Insurance Company (“Liberty”) and Allied Stores General Real Estate Co., Inc. The claims against Liberty were tried before the Court without a jury.
FINDINGS OF FACT
The Court makes the following findings of fact by a preponderance of the credible evidence and reasonable inferences to be drawn therefrom.
1. Plaintiff Leah Loftis injured her hand on November 16, 1989 while opening a door to the Jordan Marsh department store in Framingham, Massachusetts. At the time, she was 26 years old. Terrence Anderson, her then boyfriend, and now husband, was with her at the time of the accident.
2. At the time of the accident, Jordan Marsh was insured by Liberty. The Jordan Marsh/Liberty policy had a $250,000 deductible for indemnity payments and defense costs combined. There was an agreement between Liberty and Jordan Marsh which required Liberty to discuss any settlement of $10,000 or more with Jordan Marsh. At all relevant times, Liberty acted as the adjuster for claims that were within the policy’s deductible limits, and Liberty so acted in connection with the claim of the plaintiff.
3. Liberty is engaged in the business of insurance, as that term is defined in G.L.c. 176D.
4. As Loftis was entering the Jordan Marsh store on November 16, 1989, she opened one of the doors with her hand. This door opened past 90 degrees, and another door, to her right, also opened without any apparent force being applied to it, so that her hand was caught between the handles of these two doors.
5. There was conflicting evidence at the trial as to whether a gust of wind could have opened the second door. After consideration of all of the evidence, the Court concludes that it is unimportant whether a gust of wind could have opened the second door. The critical fact is that the door opened by the plaintiff was able to extend beyond 90 degrees. The second door may have been opened by another customer or in some other way. The Court finds that the plaintiff injured her hand when the two doors came together.
6. The plaintiff was treated by a number of doctors. Her injuries caused her to lose approximately three weeks of work as a dental assistant. When she returned to work, she was less dexterous and had more difficulty in accomplishing her work. She also experienced pain and numbness in parts of her hand.
7. On the day of the accident, an employee of Jordan Marsh filled out an accident report. This accident report stated in part: “Customer coming in door by multiples. Wind caught door and caught her left hand injuring three fingers.” Counsel for the plaintiff notified Jordan Marsh of her claims against it by letter dated January 10, 1990, a copy of which was shortly thereafter forwarded to Liberty.
8. On or about January 15, 1990, Jordan Marsh filed for bankruptcy, and the automatic stay in bankruptcy proceedings went into effect.
*102 9. On February 15, 1990, a Liberty supervisor sent a memorandum to a Liberty claims adjuster asking him to handle the Loftis claim, and further requesting that he obtain certain basic information about the claim. That adjuster, Mr. Tight, wrote a letter to counsel for the plaintiff advising her as to the Jordan Marsh bankruptcy filing.
10. In June 1990, the bankruptcy stay was lifted. Counsel for plaintiff filed a proof of claim with the Bankruptcy Court in October 1990.
11. On July 13, 1990, some medical documents were provided by counsel for the plaintiff to Liberty. In early December 1990, Liberty inquired whether the proof of claim had been filed with the Bankruptcy Court, and the plaintiffs then counsel promptly responded in the affirmative.
12. In early January 1991, Liberty wrote to counsel for the plaintiff and requested the medical documents with respect to a particular treating physician.
13. In late March 1991, the Liberty adjuster then assigned to the claim made some efforts to arrange for an inspection of the doors. However, Jordan Marsh could not verify that the injury occurred at the Jordan Marsh store, and was unable to do so until May 3, 1991. In May, after receipt of the accident report from Jordan Marsh, an adjuster for Liberty did inspect the doors. This adjuster looked at the wrong doors, and her error was not rectified until one year later, in May 1992, after she viewed a video made available to Liberty by successor counsel for the plaintiff.
14. On June 4, 1991, representatives of the plaintiff provided Liberty with complete medical records.
15. In January 1992, Liberty obtained the approval of the Bankruptcy Court to make an offer in this case. Liberty’s initial offer was for $1,435.00, the amount of the medical costs and lost wages suffered by the plaintiff. Then counsel for the plaintiff responded on January 16, 1992 with a 93A demand letter and requested a settlement in the amount of $20,000.00.
16. The demand letter reiterated that Liberty was notified of the claim on January 10, 1990, and stated that since that time all medical records had been supplied to Liberty. The letter further stated that in discussions during the prior week, a demand had been made by the plaintiff for $20,000.00. The letter also pointed out that the eastern entrance to the Jordan Marsh store was the location of the accident, and that when the plaintiff opened one of these doors with her right hand, the wind blew the door back beyond a 90-degree angle, while at the same time, a nearby door opened on its own. Although the letter makes clear that Loftis’s attorney was dissatisfied with the offers made by the insurance company, and the protracted negotiations, it does not specifically complain that Liberty’s investigation was not prompt. The letter concluded with an assertion by counsel that the offer of $1,435.00 “constitutes an unfair claim settlement practice in violation of M.G.L.c. 176D, s. 9, and an unfair and deceptive trade practice in violation of c. 93A. . .”
17. Counsel for Liberty responded to the demand letter with a settlement offer of $3,000.00.
18. When a Liberty claims adjuster viewed a video tape made available to her in May 1992 by present counsel for plaintiff, she concluded that she had been looking at the wrong doors since May 1991. The doors she had originally examined did not open past 90 degrees but the doors which injured the plaintiff did do so and did indeed come together.
19. Suit was brought in April 1992 against both Jordan Marsh and Liberty.
20. In Count II of her complaint, Loftis asserted that Liberty violated G.L.c. 93A, §9 and G.L.c. 176D, §3(9) by refusing to admit that liability was clear and refusing to make a reasonable offer of settlement. She further alleged that Liberty’s violations were willful and intentional.
21. The claim of the plaintiff against Jordan Marsh was settled in July 1993 for $17,500.00.
22. No employee of Liberty inspected the doors in question for at least fifteen months after the receipt of notice of the plaintiffs claim.
23. No representative of Liberty made any offer to settle plaintiffs claim until January 1992, almost two years after the claim was first reported to Liberty.
24. An entry in Liberty’s claim file dated March 20, 1991 states, “This incident occurred 11/16/89 but has never been fully investigated.”
CONCLUSIONS OF LAW
1. Liberty is subject to G.L.c. 93A and G.L.c. 176D, §3(9) with respect to the plaintiffs claims, because it was engaged in the business of insurance as an adjuster acting on behalf of Jordan Marsh. G.L.c. 176D, §l(a); G.L.c. 93A, §9(1).
2. G.L.c. 93A, §9(1), states in relevant part: “. . . any person whose rights are affected by another person violating the .provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action . . .” G.L.c. 93A, §9(3) states: “At least thirty days prior to the filing of any such action, a written demand for relief, identifying the claimant and reasonably describing the unfair or deceptive act or practice relied upon and the injury suffered, shall be mailed or delivered to any prospective respondent.”
3. G.L.c. 176D, §3(9) prohibits unfair claim settlement practices, which include the following acts or omissions: “. . . (c) Failing to adopt and implement reasonable standards for the prompt investigation of claims arising under insurance policies; (d) Refusing to pay claims without conducting a reasonable inves *103 tigation based upon all available information . . . (f) Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. . .”
4. One of the purposes of a 93A demand letter is to encourage negotiation and settlement by notifying prospective defendants of claims arising from allegedly unlawful conduct. Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 288 (1985). The letter must define the injury suffered and the relief demanded in a manner that provides the prospective defendant with an opportunity to review the facts and the law involved to see if the requested relief should be granted or denied, and to make a reasonable offer of settlement. Id. This requirement is satisfied by a letter which gives facts and statements that make the causes of the injury apparent. Piccuirro v. Gaitenby, 20 Mass.App.Ct. 286, 292 (1985).
5. The Court finds that the 93A demand letter did give reasonable notice of a demand arising from Liberty’s failure to make a reasonable offer of settlement and its refusal to pay claims without conducting a reasonable investigation. It did not give reasonable notice to Liberty that one of the unfair acts or practices alleged by Loftis was Liberty’s failure to investigate the claim promptly. Therefore, Loftis may not recover for Liberty’s lack of promptness under G.L.c. 93A.[1]
6. Liberty seeks to attribute to Jordan Marsh its failure to make a reasonable settlement offer, because Jordan Marsh was unable to find the accident report and confirm the date and place of the accident. The rights of the plaintiff cannot be affected by communication difficulties between the insurer and the insured. See G.L.c. 176D, §9(b) and (c).
7. Similarly, Liberty seeks to excuse some of the delay in reaching a settlement on the grounds that its adjuster was looking at the wrong set of doors for a considerable period of time. Although the plaintiff perhaps could have been more specific as to the precise location of the doors at which the accident occurred, the responsibility was Liberty’s and its insured’s. Liberty should have interviewed the Jordan Marsh employees in question. Further, Liberty was free to work with plaintiffs counsel to determine the precise location of the door.[2]
8. The Court finds that Liberty failed to maintain reasonable standards for a prompt and reasonable investigation, and as a result refused to pay the claim or effectuate reasonable settlement. It thereby violated G.L.c. 176D, §3 and G.L.c. 93A, §9.
9. G.L.c. 93A, §9(3) states: “Any person receiving ... a demand for relief [under this chapter] who, within thirty days of the mailing or delivery of that demand for relief, makes a written tender of settlement which is rejected by the claimant.. . may.. . limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered . . .” The Court finds that the amount Liberty offered in response to plaintiffs 93A letter was not reasonable in relation to plaintiffs damages.
10. G.L.c. 93A, §9 further states: “[RJecovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation of [this chapter]... or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated [this chapter] . . . For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence
11. Single damages under G.L.c. 93A are designed to compensate for losses which were the foreseeable consequences of the defendant’s unfair or deceptive act or practice. Bertassi v. Allstate Ins. Co., 402 Mass. 366, 372 (1988). The foreseeable loss sustained from an insurance company’s unfair settlement practice is the loss of the use of money to which the plaintiff was entitled. Id. The damages from this loss are the interest that would have been earned from this money between the time the money should have been paid and when it was actually paid. Id. at 37273. See also Wallace v. American Manufacturers Mutual Insurance Company, 22 Mass.App.Ct. 938, 939 (1986) (holding that a plaintiff must show a causal connection between an insurer’s failure to settle and an injury or loss for which recovery is sought).[3]
12. Plaintiffs damages are the interest she would have earned on a damage award for her underlying claim between the time that Liberty should have tendered a settlement and the time she actually received the settlement from Jordan Marsh. The Court finds that Liberty should have made a reasonable offer of settlement in January 1992, when it received permission of the Bankruptcy Court to settle the case. The Court further finds that plaintiff received a fair settlement from Jordan Marsh in July 1993, in the amount of $17,500.00. Therefore, applying the judgment interest rate[4] of 12 percent for a period of 18 months to the amount of $17,500.00, the Court finds that plaintiffs actual damages from Liberty’s violation of G.L.c. 93Awere $3,150.00.
13. A negligent unfair act or practice does not qualify for multiple damages under G.L.c. 93A. Squeri v. McCarrick, 32 Mass.App.Ct. 203, 208 (1992). The Court finds that Liberty’s failure to promptly investigate and make a reasonable settlement offer was negligent, and did not rise to the level of a willful or knowing violation of the statute. The Court therefore declines to award multiple damages under G.L.c. 93A. *104 The Court further declines to award punitive damages under G.L.c. 176D, §7.
14. The Court further orders that attorneys fees and costs incurred in connection with this action be awarded to plaintiff, pursuant to G.L.c. 93A, §9(4). As the parties did not provide evidence on this issue, a further hearing shall be held to determine the amount of costs and reasonable attorneys fees.
ORDER
For the foregoing reasons, it is hereby ORDERED that Liberty Mutual Insurance Company pay to Loftis damages in the amount of $3,150.00 plus costs and attorneys fees in an amount to be determined.

Liberty’s failure to investigate the claim promptly was not alleged in the complaint.

There were apparently more than 90 doors at the Jordan Marsh Framingham store and 20 major entranceways to that store.

The plaintiff argues that a 1989 amendment to G.L.c. 93A, §9, which contains the language cited in paragraph 10, supra, created the rule that single damages under 93A would be the same as the settlement amount for the underlying claim, which is the equivalent to the “judgment” referred to in the statute. She thus argues that her damages from Liberty under G.L.c. 93A are $17,500.00, the amount she received in settlement from Jordan Marsh. I disagree with this interpretation. In Bonofiglio v. Commercial Union Ins. Co., 411 Mass. 31, 37 (1991), the Supreme Judicial Court held that an arbitrator’s award is not a “judgment” under this statute. The word “judgment” refers only to a decision by a court. Id. A settlement is therefore not a judgment. Further, the plaintiff was made whole for her damages from her underlying claim by her settlement with Jordan Marsh. She now wants the court to find that her loss from the 93A violations were the same as her loss from the underlying claim. She would thus be made whole twice for her underlying damages before the court even considers punitive damages for a willful or knowing violation of G.L.c. 93A. I can see no reason to award these damages twice, creating a windfall for the plaintiff, because she reached a settlement with Jordan Marsh prior to trial. Had this settlement not occurred, the court would award actual damages on the underlying claim only once. See Schwartz v. Rose, 418 Mass. 41, 4749 (1994) (holding that appropriate damages under G.L.c. 93A for underlying claims for rescission of sale of land is the interest on the purchase price). Although the statute itself refers to multiplying damages from an underlying claim, the only way to avoid absurd results is to interpret this language as applying only where the defendant who brought about the underlying harm is the same defendant who violated G.L.c. 93A That is not the case here. Further, this portion of the statute refers explicitly to the amount to be doubled or trebled, not to the computation of single damages under G.L.c. 93A, particularly in the context of a 93A defendant who is different from the defendant in the underlying claim.

See G.L.c. 231, §6B; Patry v. Liberty Mobilehome Sales Inc., 394 Mass. 270, 273.