Tucker, Richard T., J.
This matter came on for a juiy-waived trial on claims of violations of G.L.c. 93A and G.L.c. 176D regarding the above-entitled automobile negligence suit. The matter was tried on April 27, 28 and May 1, 2009. Testifying were Jennifer Fulone, Donna Morin, Donald Ambach, Martin Hippert and Pandora Lagadonis. The parties entered thirty-four exhibits into evidence. Based upon the testimony that I found to be credible and the exhibits, I find the following facts and make the following rulings of law generally, reserving more detailed findings and rulings for the discussion of the issues.
Procedural Background
The plaintiff, Jennifer MacKenzie (MacKenzie), originally filed suit in the District Court against Janet Comeau (Comeau) and Commerce Insurance Company, Inc. (Commerce) seeking personal injuiy damages against Comeau arising out of a motor vehicle accident occurring on November 27, 2001, and damages against Commerce for unfair settlement practices prohibited by Mass. G.L.c. 176D and G.L.c. 93A. The unfair settlement practices claim was severed from the tort action and stayed.
The claim against Comeau was tried in the District Court and a finding was made for MacKenzie. The Court awarded damages to MacKenzie in the amount of $81,334.00 plus interest. The case was transferred by Comeau to the Worcester Superior Court for a jury trial pursuant to G.L.c. 231. While the case was pending in the Superior Court the matter was arbitrated, upon the agreement of both parties. The arbitrator found for MacKenzie and awarded her $31,833.34. This amount was paid by Commerce and the tort portion of the action was therefore concluded. The stay of the unfair settlement practices claim against Commerce was vacated and this matter came on for trial, without juiy, before this Court.
Factual Background — The Accident and Injuries Sustained
On November 27, 2001 MacKenzie was operating her Saab motor vehicle on South Quinsigamond Street, Shrewsbury, Massachusetts. At the intersection of Route 9 she stopped her vehicle at a red light. *8 Behind her was the vehicle operated by defendant Comeau. When the light changed to green and the MacKenzie vehicle delayed in heading forward the Comeau vehicle proceeded and struck the rear of the MacKenzie vehicle.
The impact between the vehicles was moderate with the MacKenzie’s vehicle sustaining $165.00 worth of damage. Despite this low impact, MacKenzie immediately felt pain in her back and drove from the scene to her treating physician. MacKenzie had previously been injured in a motor vehicle accident in 1994 suffering primarily temporomandibulaijoint (TMJ) symptoms, neck and back neuralgia. Some of these injuries resolved with treatment, but she continued to receive treatment and management of chronic pain symptoms.[1]
On the date of this accident MacKenzie went directly to Dr. Mark Davini, D.C. who had treated her for the 1994 accident. She presented with bi-lateral sacroiliac pain and thoracic pain. These were new symptoms, MacKenzie not having injured these areas of her body in the 1994 accident.
On December 18, 2001 she began treatment at UMass Memorial Hospital and began seeing Dr. Daniel Tanenbaum commencing on January 17, 2002. Dr. Tanenbaum continued to treat MacKenzie for her sacroiliac injury for months thereafter, but MacKenzie received little relief from her pain despite medications and the wearing of a prescribed sacroiliac belt.
While being treated by Dr. Tanenbaum she was referred to Dr. Naren Sodha, a neurologist, who confirmed MacKenzie’s sacroiliac injury.
In October of 2002, Dr. Tanenbaum referred Mac-Kenzie to Dr. Kevin Sullivan for examination and neuroscopic guided sacroiliac joint injection. She continued with physical therapy at Worcester Physical Therapy Services, Inc. through mid-2003 and thereafter continued her chiropractic treatment once or twice a week though May 2005. As her pain never really subsided she continued with her chiropractic treatments again in September 2005 and has continued the same to the present.
Dr. Davini opined in his report of November 30, 2003 that MacKenzie’s prognosis was poor and that she had suffered a twenty percent partial impairment as a result of her sacroiliac injuiy. In May of 2004 x-rays revealed “abnormal findings of the sacroiliac joint with a degree of subchondral sclerosis” (hardening of cartilage) secondary to the November 2001 motor vehicle accident. Dr. Sodha reviewed these x-rays in June of 2005 and opined that they revealed pathologic changes to her sacroiliac joint.
In addition to her treating physicians, MacKenzie was examined by Dr. Frederick Chassman on September 10, 2003 for a chiropractic independent medical examination (IME). At that time Dr. Chassman confirmed the injuiy sustained by MacKenzie, that the injuries were caused by this motor vehicle accident and that the treatment to that date had been reasonable and necessary. Dr. Chassman also prognosed that she had not yet reached a medical end point.
Factual Background — Plaintiffs Claim and Its Handling by Commerce
Shortly after the accident, Commerce spoke to its insured, Comeau, who denied damage to her vehicle, told Commerce that MacKenzie had long-standing back problems that pre-existed the accident and that the impact had been a “love tap.” Regardless of Comeau’s opinions, Commerce soon determined that the accident had been the fault of its insured and sought to obtain information regarding MacKenzie’s claim of injuries.
In September of 2002 Commerce received a call from MacKenzie’s attorney indicating that she was still treating as a result of her injuries. No settlement demand was made by MacKenzie’s attorney at that time. In March 2003 Commerce was advised that the carrier of MacKenzie’s personal injury protection (PIP) coverage had exhausted these benefits, and, after paying medical bills of $2,916.00, was now closing the PIP claim.
Plaintiffs counsel forwarded to Commerce in late January 2004 medical bills and records relative to MacKenzie’s treatment in a “settlement demand package" in which counsel reviewed MacKenzie’s past medical history, the injuries sustained in the subject accident and the corresponding treatment to date. Medical bills provided in this demand package totaled over $13,000.00. The demand package included some treatment records of Dr. Davini. Dr. Tanenbaum’s records and reports as well as the IME report of Dr. Chassman were included. The Nicholas-Michaels massage therapy records or notes of treatment were not included.
Commerce responded by requesting of the attorney the massage records, chiropractic records of one year before the accident and records of treatment from a “November 2002" motor vehicle accident referred to by Dr. Tanenbaum.
Counsel for MacKenzie advised Commerce that there was no November 2002 motor vehicle accident and that this was an error in Dr. Tanenbaum’s report, the doctor meaning to write November 2001. He also advised that MacKenzie had not received chiropractic services from Dr. Davini for one year prior to the motor vehicle accident and therefore no records existed. Lastly, counsel advised that although his client had received massage therapy, the massage center had not created treatment notes for MacKenzie’s thirty-three visits.
The adjuster at Commerce during this time period, Jennifer Fulone (Fulone), testified that she knew that MacKenzie had been receiving Social Security Disability benefits prior to the accident. She also learned that *9 the PIP carrier had had an independent medical evaluation performed. Fulone was informed that the IME “result not good” in that the plaintiff had not yet reached an end result by June of 2003. She also verified by an insurance computer data base (ISO) that there was no November 2002 motor vehicle accident involving MacKenzie.
In October of 2003 Commerce placed MacKenzie under surveillance, but this revealed only that she needed and did use a cane to ambulate. In November of 2003 the surveillance continued and it was again noted that MacKenzie could move without restriction, but still used a cane. Commerce increased its reserve against this claim to $35,000.00.
By letter of March 10, 2004, not having had any response to the demand package forwarded January 26, 2004, counsel for MacKenzie served upon Commerce a written demand pursuant to Mass. G.L.c. 93A claiming unfair settlement practices prohibited by Mass. G.L.c. 176D. This demand set forth that MacK-enzie had suffered a twenty percent permanent partial disability as a result of the accident; that she was still suffering from pain and pursuing further treatment; and that medical bills and expenses to that date totaled $13,023.98. The adjuster, Fulone, verified approximately $10,500.00 of these bills and charges as being related to the accident. She knew that Commerce had already concluded that their insured was at fault and was aware that MacKenzie’s counsel had denied the existence of any massage records or chiropractic records for the year prior to the accident, and that her computer search concluded that MacKenzie had been involved in no 2002 motor vehicle accident. Fulone noted however on her copy of this demand letter that the plaintiff was her “attorney’s wife’s cousin” and that the defendant is “friends with the plaintiff.” Fulone explained that because of these relationships, she believed that MacKenzie might have a higher expectation of recovery.
Commerce made an offer of $1,000.00 in response to the written demand for relief in which MacKenzie had made a demand for $100,000.00 to settle her claim. Commerce continued to request full records of her past treatment for prior injuries, as well as updated records of treatment for the current motor vehicle accident. In response, plaintiffs attorney forwarded full physical therapy notes and records on March 30, 2004 and again advised that “Nicholas-Mi-chaels massage therapists do not maintain office notes.” Stating that they still did not have the complete chiropractic records, as well as raising the “low impact” defense, Commerce did not increase its offer.
During the months that followed in 2004, Commerce maintained its position that the “nominal offer of $1000" was proper as it maintained that it did not have complete medical records of treatment and that the case could be defended on the ’’low impact" as well as the plaintiffs “significant past medical history.”
Suit was commenced in the District Court on June 28, 2004. While Count II, the unfair settlement practices claim, was severed and stayed, Count I, the negligence claim against Commerce’s insured went to trial on Januaiy 17,2006. Prior to this date Commerce had retained orthopedic surgeon Dr. Harvey Taylor to conduct a record review of MacKenzie’s treatment and thereafter to conduct a medical examination. He concluded in his report of December 9, 2004 that MacKenzie’s “left sacroiliac sprain was causally related to the motor vehicle accident of November of 2001.” He did opine that for such an injury, if chiropractic treatment did not achieve positive results after eight weeks, “other modalities should have been entertained.” He also related that the x-rays of the sacroiliac joint revealed to him changes that appeared to more likely be “degenerative in nature and not traumatic.” In his April 6, 2005 report, Dr. Taylor again stated that the sacroiliac sprain was caused by the November 2001 accident and that six to eight weeks of chiropractic treatment and the physical therapy received was reasonable. He again stated that “other modalities” of treatment “should have been entertained.”[2]
Despite Dr. Taylor’s findings, Commerce’s own in-house evaluation range of settlement of $7500-$30K" and Commerce’s defense counsels’ opinion that “(i]f judge relates all the tx to include a 20% permanency, close to the policy limit ($100,000). If no, then an award in the upper teens is likely,” Commerce made a pre-trial offer of settlement of $7,000.
A judgment for the plaintiff was rendered by the District Court in the amount of $84,500 plus interest and costs for a total award of $96,830.
Since Commerce appealed this decision to the Superior Court for trial by jury, plaintiffs counsel forwarded a “Further Written Demand Pursuant to G.L.c. 93A” on April 3, 2006 contending that certainly now “(t)here is no justification whatsoever for failing to make an offer of settlement consistent with my original demand for settlement pursuant to G.L.c. 93A.” Plaintiffs counsel indicated that MacKenzie would waive any postjudgment interest and would accept the district court award of $96,830.99 if payment was made within thirty days. To this demand Commerce increased its offer of settlement to $10,000 on April 26, 2006.
As stated above, both parties agreed to binding arbitration instead of pursuing a jury trial. The arbitrator awarded plaintiff total damages (interest and appeal waived) of $31,833.34 on August 13, 2007.
LEGAL RULINGS AND DISCUSSION
Liability
G.L.c. 176D was enacted to deter, among other things, unfair settlement practices within the insurance industry. Its provisions are actionable through G.L.c. 93A, the Massachusetts Consumer Protection *10 Act. The provisions of G.L.c. 176D set forth various actions which are defined as “unfair or deceptive acts or practices in the business of insurance” and therefore, violations of G.L.c. 93A. At issue in this case is whether Commerce violated G.L.c. 176D, §3 which sets forth as an unfair claims settlements practice an insurer’s “failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.” G.L.c. 176D, §3(9)(f).
Plaintiff alleges that Commerce failed to make a prompt offer of settlement once “liability has become reasonably clear.” The use of the term “liability” in this phrase “encompasses both fault and damages.” Clegg v. Butler, 424 Mass. 413, 421 (1987); Metropolitan Property & Casualty Insurance Company v. Ghoukas, 47 Mass.App.Ct. 196, 199 (1999).
Despite having concluded shortly after the accident that fault lay with its insured, Commerce failed to make reasonable offers of settlement throughout the entire life of this claim. Certainly when it responded to plaintiffs attorney’s c. 93A demand with a $1,000 offer of settlement, this was not reasonable in light of the fact that the adjuster verified over $10,000 in bills and charges as being related to the accident. A physician of MacKenzie was prepared to state that she had suffered a 20% permanent partial disability as a result. of the accident, Dr. Tanenbaum related her sacroiliac injury to the accident and the surveillance of MacK-enzie revealed that as late as November of 2003, two years after the accident, MacKenzie found it necessary to use a cane when she ambulated.
Dr. Donald Ambach (Ambach), an expert witness called by the plaintiff, testified from his forty-two years of handling claims for Traveler’s Insurance Company that Commerce at no time made a reasonable offer of settlement in this action despite their insured’s (Comeau’s) clear liability. He noted that Commerce ignored the PIP carrier’s IME that related her injuries to the accident and that when Commerce finally started raising its offers of settlement ending at $10,000 prior to the District Court trial, this amount did not even reflect the amount of medical bills and charges she had incurred, to say nothing of the ongoing pain and suffering and disability. Ambach’s expert opinion, which I find to be credible, was that Commerce did not make prompt reasonable settlement offers after liability was reasonably clear.
It is true that Commerce challenged principally the causal relationship between the accident and MacKenzie’s claimed injuries. To this end, Commerce continuously complained that it did not have “complete” medical records from which to evaluate the claim.[3] Part of its problem however, was that Commerce continuously overlooked its own investigation which revealed that there was no 2002 motor vehicle accident. Also Commerce would not accept plaintiffs counsel when he repeatedly informed Commerce that there were no massage therapy records or chiropractic records dating back one year prior to the accident. At least by March 30, 2004, when plaintiffs attorney forwarded full physical therapy notes and records to Commerce, it had sufficient records to make a reasonable offer of settlement. The fact that it viewed this claim with a jaundiced eye due to the “low impact” nature of the collision might be considered as a factor in determining what a reasonable offer of settlement would be. However, as the expert Ambach opined, and I so find, that despite these questions on its part, Commerce never acted reasonably to make a prompt and reasonable settlement after liability was reasonably clear.
I find that Commerce is liable for its violation of G.L.c. 176D, §3 in that it failed “to effect prompt, fair and equitable settlements of claims in which liability has become reasonably clear.”
Damages
Unjust delay in reaching a settlement subjects a claimant to costs and frustrations that are encountered when litigation must be instituted. “Moreover, when an insurer wrongfully withholds funds from a claimant, it is depriving that claimant of the use of those funds." Clegg v. Butler, 424 Mass. 413, 419 (1997). A claimant’s loss of use of money that should have been obtained through settlement constitutes “actual damages” under G.L.c. 93A, §9(3), and is applicable in this case. See, Shwartz v. Rose, 418 Mass. 41, 47 (1994). MacKenzie lost the use of the funds eventually obtained through arbitration of $31,833.34 for the period of March 30, 2004, at which time Commerce had sufficient medical information to adjust this claim, through the date of the arbitrator’s award on August 26, 2007, a period of approximately three years and five months. I find that such funds could have been invested for this period in low risk, conservative investments and return a rate of 6% per annum. See Bertassi v. All State Ins. Co., 402 Mass. 366, 373 (1988) (damages under G.L.c. 93A, §9(3) consists of “interest at a fair rate on the [settlement or award amount”). The loss to MacKenzie for the loss of use of these funds for that period is $6,525.83. This amount represents the actual damages sustained, i.e. the losses which were the foreseeable consequence of Commerce’s unfair conduct after it had sufficient information to offer a reasonable settlement. Cohen v. Liberty Mut. Ins. Co., 41 Mass.App.Ct. 748, 755 (1996).[4]
Commerce was handling this claim against the background of a complicated prior medical situation of the plaintiff for which she had already been determined to be disabled by the Social Security Administration. She had ongoing treatment for chronic pain symptoms prior to the subject accident. The impact of the vehicles was minor. Although Commerce’s handling of this claim was a knowing violation of G.L.c. 93A, thus subjecting it to an award of multiple damages as a punitive remedy, in light of the conflicting *11 factors of the low impact collision and the extensive prior medical history of the plaintiff, the actual damages sustained by MacKenzie should be doubled, not trebled.
ORDER
(1) For the reasons set forth above, this Court finds that Commerce Insurance Company did violate its duty as a liability insurer under G.L.c. 176D, §3(9)(f) “to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.”
(2) This Court finds that the violations set forth above were knowing violations of G.L.c. 93A and that doubling the amount of actual damages is an appropriate award for such violations. Therefore, the Court AWARDS the plaintiff Jennifer MacKenzie the amount of $13,051.66 in actual and punitive damages.
(3) This Court finds, under G.L.c. 93A, §9(4), that Commerce Insurance Company shall also pay to the plaintiff Jennifer MacKenzie the reasonable attorneys fees and costs incurred in prosecuting this action. Plaintiff shall serve her application for reasonable attorneys fees and costs, supported by appropriate affidavits and documentation, no later than twenty (20) days from the date of this decision. The defendant Commerce, no later than ten (10) days following the filing by plaintiff of the application, shall serve any opposition thereto. A hearing regarding the application for attorneys fees shall be scheduled thereafter.

MacKenzie underwent bilateral temporomandibular (TMJ) surgery in February 1999. She continued to receive ongoing treatment for TMJ and facial pain, right wrist pain, lower extremity pain (right knee), rib pain and thoracic spine pain.

Nhe reports of Dr. Taylor do not reveal whether he was aware of the extensive massage therapy that the plaintiff received or whether he believed such to be an appropriate modality of treatment.

Prior to suit being filed, Commerce never sought to have MacKenzie provide signed record authorizations so that it might obtain those records that it thought were missing. Of course, after suit was filed in June 2004 Commerce had the opportunity to “discover” these records under the mies of civil procedure.

Although plaintiff stated in her Pretrial Memorandum that the appropriate rate of interest for calculation of damages would be 5% or 6%, plaintiffs Supplemental Pretrial Memorandum proposes that the statutory prejudgment rate (G.L.c. 231, §6B) of 12% should be used. Despite plaintiffs citation to some trial court decisions that have utilized this rate, I decline to do so. G.L.c. 231, §6B is a legislative mandate that prejudgment interest "shall be added by the clerk of court... at the rate of twelve per cent per annum from the date of commencement. ..” However, damages under G.L.c. 93A, in the form of interest, are to compensate for a plaintiffs “loss of use of money during those periods the money that was due him remained unpaid.” Bertassi v. Allstate Ins. Co., 402 Mass. 366, 372 (1988) (emphasis added). These damages “consist of interest at a fair rate . . .” Id. at 373. This Court believes these directives require the use of a reasonable rate that could actually be obtained (and therefore lost due to the defendants’ actions) during the time period in issue.