RICHARD C. BERTASSI vs. ALLSTATE INSURANCE COMPANY.

Hampden. January 5, 1988. — May 13, 1988.

Present: HENNESSEY, C.J., WILKINS, ABRAMS, LYNCH, & O'CONNOR, JJ.

*Consumer Protection Act*, Insurance, Unfair act or practice, Damages, Attorney's fees. *Insurance*, Motor vehicle insurance, Unfair act or practice, Subrogation. *Damages*, Consumer protection case, Interest, Attorney's fees.

In an action by an insured seeking contract damages and damages under G. L. c. 93A, § 9, against his automobile insurer, in which the plaintiff alleged that the insurer unfairly and in bad faith refused to pay his claims arising under the underinsured motorist provisions of two insurance policies, the judge correctly concluded that the insurer had violated both the plaintiff's contract rights and provisions of G. L. c. 93A by its coercive insistence that he execute an agreement protecting the insurer's alleged subrogation rights as a condition precedent to the insurer's payment of the claims where, even though the two policies accorded the insurer certain subrogation rights, nothing in the policies entitled the insurer to a separate agreement to that effect. [369-371] ABRAMS, J., concurring.

Where, under subrogation provisions of G. L. c. 175, § 113L (4), as well as under provisions of two automobile insurance policies, an insurer was entitled to recover from its insured any amounts paid pursuant to the $10,000 mandatory underinsured motorist coverage provided by each policy, the amount recoverable by the insured on a contract claim against the insurer, seeking payment of the $35,000 aggregate underinsured motorist coverage of the two policies, was to be reduced by the amount of $20,000 the plaintiff had recovered in settlements from two alleged tortfeasors (other than the underinsured motorist) less the cost of recovering the settlements. [371-372] ABRAMS, J., concurring.

Where, in an action under G. L. c. 93A, the Consumer Protection Act, by an insured alleging that his motor vehicle liability insurer unfairly and in bad faith refused to pay his claims arising under the underinsured motorist provisions of two insurance policies, nothing in the record suggested that the plaintiff sustained any loss as a foreseeable consequence of the insurer's unfair settlement practice other than the loss of use of the money to which he was entitled under the policies, the plaintiff was to recover damages in the form of interest on the money due him. [372] ABRAMS, J., concurring.

On an appeal contesting a judge's assessment of damages in an action under G. L. c. 93A by an insured alleging that his motor vehicle liability insurer unfairly and in bad faith refused to pay his claims arising under the underinsured motorist provisions of two policies of insurance, this court remanded the case (1) for findings as to when the insurer's liability to pay the money due under the underinsurance provisions of the two policies was reasonably clear and as to when the plaintiff effectively received a portion of that amount as a result of the settlement of claims against two alleged tortfeasors; (2) for reconsideration of the question of multiple damages which the trial judge had awarded, based at least in part on his incorrect conclusion that the insurer had no repayment or subrogation rights; and (3) for reconsideration of the judge's assessment of an attorney's fee in light of this court's substantial reduction of the plaintiff's damages. [372-374] ABRAMS, J., concurring.

CIVIL ACTION commenced in the Superior Court Department on February 11, 1983.

The case was heard by *John F. Murphy, Jr.*, J., on an agreed statement of facts.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*William G. White* (*Kevin D. Withers* with him) for the defendant.

*Eugene J. Mulcahy* (*Ronald S. Smith* with him) for the plaintiff.

O'CONNOR, J. The plaintiff seeks contract damages and damages under G. L. c. 93A, § 9 (1986 ed.), claiming that the defendant, Allstate Insurance Company (Allstate), unfairly and in bad faith refused to make payments to the plaintiff as required by the underinsured motorist provisions of two policies of automobile insurance issued by Allstate to the plaintiff. The case was tried before a judge without a jury on a statement of agreed facts. The judge concluded that Allstate had violated both the plaintiff's contract rights and G. L. c. 93A (1986 ed.), by insisting that the plaintiff execute a trust agreement protecting Allstate's alleged subrogation rights as a condition precedent to Allstate's paying underinsurance benefits to the plaintiff. The judge awarded treble damages, attorney's fees, and costs. Allstate appealed, and we transferred the case to

this court on our own motion. We agree with the judge that Allstate violated the plaintiff's contract rights and c. 93A. However, we conclude that the judge's assessment of damages was erroneous. Accordingly, we affirm the judgment in part, we reverse in part, and we remand the case for further proceedings.

The plaintiff sustained serious bodily injury when he was struck by an automobile driven by John Ryan on April 18, 1982. At the time of the accident, the plaintiff had just left the VIP Lounge at 821 Boston Road in Springfield and was walking across Boston Road to a shopping center parking lot where he had parked his automobile. Ryan was driving home on Boston Road from the Harmony Lodge of Elks no. 140, where he was employed as a bartender, and he was intoxicated. As a result of the accident, the plaintiff incurred approximately $100,000 in medical expenses, was permanently disabled, and suffered a substantial loss of income. He brought separate tort actions against Ryan, SMM, Inc., which operated the VIP Lounge, and the Harmony Lodge of Elks no. 140. Ryan carried only $10,000 automobile liability insurance.

The plaintiff also submitted claims to Allstate, his own automobile insurer, under two policies providing coverage for bodily injury caused by an underinsured motorist. The limit of underinsurance coverage on one policy was $25,000, and the limit was $10,000 on the other. The relevant language in the two policies is identical. Each policy, under the heading, "Optional Insurance . . . Part 7. Bodily Injury Caused by an Underinsured Auto," provides as follows: "Sometimes an owner or operator of an auto legally responsible for an accident is underinsured. Under this Part, we will pay damages for bodily injury to people injured or killed as a result of certain accidents caused by someone who does not have enough insurance.

"We will only pay if the injured person is legally entitled to recover from the owner or operator of the underinsured auto. We consider an auto to be underinsured if the insurance covering the auto or operator is not sufficient to pay for the damages sustained by the injured person. . . .

"Under this Part, we will only pay if the limits of the responsible person's auto insurance policies, bonds or self insurance are less than the amount of the damages due the injured person. In that case, we will pay the balance of the damages up to the limits shown for this Part on your Coverage Selections page."

Each policy, in a section entitled "General Provisions and Exclusions . . . 5. Our Right To Be Repaid," also provides: "Sometimes we may make a payment under this policy to you or to someone else who has a separate legal right to recover damages from others. In that case, those legal rights may be exercised by us. Anyone receiving payment under those circumstances must do nothing to interfere with those rights. He or she must also do whatever is necessary to help us recover for ourselves up to the amount we have paid. If we then recover more than we paid, we will pay that person the excess, less his or her proportionate share of the costs of recovery, including reasonable attorneys' fees.

"Sometimes you or someone else may recover money from the person legally responsible for an accident and *also* receive money from us for the same accident. If so, the amount we paid must be repaid to us to the extent that you or someone else recovers. We do not have to be repaid for any money we have paid under Medical Payments (Part 6). Whenever we are entitled to repayment from anyone, the amount owed us can be reduced by our proportionate share of the costs of recovering the money, including reasonable attorneys' fees." (Emphasis in original.)

Allstate has never contended that Ryan's automobile was not underinsured by at least $35,000. Nevertheless, Allstate agreed to pay the underinsurance benefits to the plaintiff only if the plaintiff would agree in writing to pay back to Allstate "whatever monies are recovered by [the plaintiff] less reasonable attorney's fees and cost from the actions [that were] pending against VIP Lounge and Elks Harmony Lodge." Being unpersuaded that the policies required such reimbursement, the plaintiff refused to execute the proposed agreement. Ultimately, the plaintiff sent Allstate a demand letter relative to each policy pursuant to G. L. c. 93A, § 9 (3). Allstate responded

by reiterating that the aforementioned agreement was a precondition to payment of the plaintiff's claims.

While the matter was under discussion between the plaintiff and Allstate, the plaintiff pursued his tort actions against Ryan, SMM, Inc., and the lodge. The case against Ryan was settled for Ryan's automobile policy limit of $10,000. Also, in October, 1984, the plaintiff and SMM, Inc. (VIP Lounge), settled for $10,000, and in June, 1985, the case against the lodge was settled for another $10,000.

The parties were not in accord with respect to whether Allstate was entitled to be subrogated to the plaintiff's rights against the VIP Lounge and the lodge. However, soon after the accident, it had become apparent that the tort damages due the plaintiff from Ryan were far in excess of Ryan's $10,000 liability coverage plus $35,000. Thus, the policies' provision that Allstate would pay the balance of the damages up to the limits shown, required Allstate at that time to pay the full coverage of $35,000 to the plaintiff. Nothing in the policies excused Allstate's performance if the plaintiff were to decline to provide Allstate with a written agreement relative to subrogation rights. This is true even though, as we declare below, the policies entitled Allstate to subsequent reimbursement from the plaintiff's settlements with the VIP Lounge and the lodge. The fact that Allstate was entitled under the policies to subrogation rights does not suggest that Allstate was entitled to a separate agreement to that effect. The judge was correct, therefore, in concluding that Allstate violated the plaintiff's contract rights.

General Laws c. 93A, § 9 (1), provides, with immaterial exceptions, that any person "who has been injured by another person's use . . . of any method, act or practice declared to be unlawful by section two . . . may bring an action in the superior court . . . for damages . . . ." Chapter 93A, § 2 (*a*), makes "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce" unlawful. We have no doubt that Allstate's coercive insistence on the plaintiff's signing the proposed agreement, thus capitulating to Allstate's claim of subrogation rights, as a pre-

condition to Allstate's compliance with the contractual under-taking was unfair within the meaning of c. 93A, § 2 (*a*).

We come to the question of damages. The judge concluded that the "single damages" to which the plaintiff is entitled are $35,000. He also concluded that the plaintiff is entitled to treble damages, attorney's fees in the sum of $20,000, and costs. Judgment in the sum of $105,000, plus $20,000, plus costs, was entered. The assessment of damages was not correct.

The contract damages are not $35,000. Furthermore, the contract damages are not the "single damages" for G.L. c. 93A purposes. Lastly, it is appropriate that, in light of this opinion, the judge reconsider whether the single damages should be trebled and whether the attorney's fees should be reduced. We discuss each of these propositions in turn.

The judge concluded that, because the $35,000 underinsurance coverage, had it been paid, added to the $30,000 the plaintiff recovered from Ryan, the VIP Lounge, and the lodge, would not cover the plaintiff's entire loss, Allstate would not have been entitled to repayment of any portion of the $35,000. We do not agree. Each automobile policy issued by Allstate to the plaintiff was required by G. L. c. 175, § 113L (1986 ed.), to provide $10,000 underinsurance coverage. Also, paragraph (4) of § 113L provides: "In the event of payment to any person under the coverage required by this section and subject to the terms and conditions of such coverage, the insurer making such payment shall, to the extent thereof, be entitled to the proceeds of any settlement or judgment resulting from the exercise of any rights of recovery of such person against any person or organization legally responsible for the bodily injury for which such payment is made . . . ." Although the underinsurance provisions here were contained in a part of the policies entitled "Optional Insurance," they were nevertheless mandatory in each policy to the extent of $10,000 coverage. Thus, § 113L (4) applies, and Allstate was entitled to the plaintiff's repayment of $20,000, less the cost of recovering it, from the proceeds of the plaintiff's settlement with the VIP Lounge and the lodge.

Nothing in the policies requires a different conclusion. Rather, the policies, consistent with the statute, provide in the "General Provisions and Exclusions" section, quoted in relevant part above, that if the insured recovers money from Allstate and from others legally responsible for the accident, the amount paid by Allstate must be repaid to the extent of the recovery.

The repayment (subrogation) provisions of G. L. c. 175, § 113L (4), and of the instant policies, do not conflict with apparent legislative objectives. A person in the plaintiff's circumstances is entitled to be compensated to the extent of the applicable automobile liability insurance, plus, as a minimum, an amount equal to the limit of his underinsurance coverage. Therefore, in this case, the plaintiff was entitled to Ryan's $10,000 liability insurance plus $35,000. The $35,000 was first due from Allstate, but when the plaintiff recovered an additional $20,000 from the other alleged tortfeasors, that $20,000 was recovered for Allstate's benefit. If the plaintiff had recovered $40,000 from those parties, all but $5,000 would have been recovered for Allstate.

It follows from what has been said that the plaintiff is not entitled to $35,000 contract damages, but rather to $15,000 plus the cost of recovering $20,000 in settlements. That figure is without interest, which we deal with below in conjunction with the c. 93A claim.

The amount due under the policies compensates for the injuries caused by the accident. Single damages under c. 93A, however, are designed only to compensate for the "losses which were the foreseeable consequences of the defendant's unfair and deceptive act or practice." *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 101 (1983). *Wallace* v. *American Mfrs. Mut. Ins. Co.*, 22 Mass. App. Ct. 938, 940 (1986). There is nothing in the record here that suggests that the plaintiff sustained a loss as a foreseeable consequence of Allstate's unfair settlement practice other than the loss of use of the money to which he was entitled under the policies. The plaintiff, then, is entitled to damages under G. L. c. 93A, § 9 (3), in the form of interest, for his loss of use of money during those periods the money that was due him remained unpaid. On

remand, findings should be made as to when Allstate's liability to pay $35,000 was reasonably clear and as to when the plaintiff effectively received $20,000 of that amount as a result of the settlement of his claims against the VIP Lounge and the lodge. The plaintiff's single damages under G. L. c. 93A, § 9 (3), consist of interest at a fair rate on $35,000 from the time that that sum should have been paid until the date of judgment, reduced by the interest at a fair rate on the plaintiff's net recoveries (taking into account recovery costs) from the VIP Lounge and the lodge from the time or times the plaintiff received those sums until judgment.

Interest may not be awarded twice, once on the contract claim and again on the c. 93A claim. *Calimlim* v. *Foreign Car Center, Inc.*, 392 Mass. 228, 235-236 (1984). It should be awarded under the c. 93A claim, *id.*, and, as provided by G. L. c. 93A, § 9 (3), recovery shall be "up to three but not less than two times [the interest amount] if the court finds that the use or employment of the act or practice was a willful or knowing violation of [G. L. c. 93A, § 2] or that the refusal to grant relief upon demand was made in bad faith with knowledge or reason to know that the act or practice complained of violated said section two." The judge's discretionary trebling of damages appears to have been based at least in part on his conclusion that the defendant had no repayment or subrogation rights. In light of our decision that that conclusion was incorrect, we think the interests of justice would be best served by the judge's reconsideration of the multiple damages question. We intimate no opinion of our own on that question.

Lastly, it appears that the judge's assessment of $20,000 attorney's fee should also be reconsidered. Again we intimate no view with respect to what the assessment should be, but we recognize that, ordinarily, one of the factors to be considered in an award of attorney's fees is the amount of the over-all recovery. *Linthicum* v. *Archambault*, 379 Mass. 381, 388-389 (1979). As a result of our decision, the amount of the plaintiff's damages has been substantially reduced. Of course, we also are mindful of the principle that "[t]he evolution of c. 93A has shown that there is a benefit to the public where deception in

the marketplace is brought to light (and thereby corrected) by an individual who has been deceived even though his actual damages were not proved." *Trempe* v. *Aetna Casualty & Sur. Co.*, 20 Mass. App. Ct. 448, 458 (1985).

The judgment is affirmed with respect to the defendant's contractual and c. 93A liability. The judgment is reversed as to damages, and the case is remanded to the Superior Court for further proceedings consistent with this opinion. The judge, in his or her discretion, may award appellate attorney's fees. See *Patry* v. *Liberty Mobilehome Sales, Inc.*, 394 Mass. 270, 272 (1985).

*So ordered.*

ABRAMS, J. (concurring). I concur with the court's conclusion that the terms of the insurance policy require subrogation. I write separately to emphasize certain factors that the trial judge may consider regarding multiple damages and attorney's fees.

The court has left open on remand the issue of multiple damages, because the judge's award of treble damages may have been based on Allstate's assertion of its subrogation rights. I do not agree. As I read the judge's findings and conclusions, the award of treble damages was based on the character of Allstate's violation of c. 93A, and not on its assertion of subrogation rights. The judge found that Allstate had several alternative methods available to protect its rights in the subrogation dispute, including the plaintiff's offer to place the contested proceeds in escrow pending a judicial decision. Nevertheless, the judge found that Allstate chose "to withhold payment of its legal obligation," and attempted "to force [the] plaintiff to accept Allstate's interpretation of the contract and the law." The dispute continued over a two and one-half to three-year period, and the judge found that Allstate, during this period, "[m]aintain[ed] its position of withholding payment of an acknowledged liability of $35,000 to a seriously injured and incapacitated plaintiff when its right to subrogation could have

been more than adequately protected by other means . . . ." The judge's findings and award of treble damages indicate "that the trial judge made a determination that [Allstate] acted 'wilfully' or 'knowingly'" in violation of c. 93A. See *Service Publications, Inc.* v. *Goverman,* 396 Mass. 567, 578 n.13 (1986). Our resolution of the dispute in Allstate's favor does not alter the character of Allstate's violation of c. 93A.

As regards the assessment of attorney's fees, the court correctly notes that the judge should consider the amount of the over-all recovery. However, this is only one factor. "[T]he judge on remand should consider the nature of the case and the issues presented, the time and labor required, the amount of damages involved, the result obtained, the experience, reputation and ability of the attorney, the usual price charged for similar services by other attorneys in the same area, and the amount of awards in similar cases." *Linthicum* v. *Archambault,* 379 Mass. 381, 388-389 (1979). "The amount of reasonable attorneys' fees under c. 93A is within the broad discretion of the trial judge," *DiMarzo* v. *American Mut. Ins. Co.,* 389 Mass. 85, 106 (1983), and will be upheld absent an abuse of such discretion. See *id.* As I read today's opinion, there is no suggestion that the award for the trial proceedings in any way constituted an abuse of discretion. The judge merely is directed to reconsider the award in light of the court's opinion.