EFRAIN MARTINEZ RIVERA[1] & another[2] vs. COMMERCE
INSURANCE COMPANY & others.[3]

No. 12-P-483.

Hampden. March 19, 2013. - August 16, 2013.

Present: CYPHER, BROWN, & COHEN, JJ.

*Consumer Protection Act,* Damages, Offer of settlement, Unfair or deceptive
act. *Damages,* Consumer protection case, Loss of chance, Interest. *Insur-
ance,* Settlement of claim, Unfair act or practice, Interest. *Interest.*

In a civil action in which the defendant insurer failed to conduct a reasonable
investigation and to effect a prompt, fair, and equitable settlement once li-
ability was reasonably clear, in violation of G. L. c. 93A, the actual dam-
ages to which the plaintiff was entitled may include reasonable tort-related
expenses and disbursements caused by the bad faith delay; therefore,
because no evidence was taken on the appropriateness and reasonableness
of the plaintiff's expenses and disbursements, this court remanded the mat-
ter for further findings. [148-150]

In a civil action in which the defendant insurer failed to conduct a reasonable
investigation and to effect a prompt, fair, and equitable settlement once li-
ability was reasonably clear, in violation of G. L. c. 93A, the judge did not
abuse his discretion in employing an interest rate of six percent in calculat-
ing damages. [150]


CIVIL ACTION commenced in the Superior Court Department on
August 7, 2006.

The case was heard by *Cornelius J. Moriarty, II,* J., and a
motion to amend the judgment was also heard by him.

*Robert A. DiTusa* for the plaintiffs.

*John F. Hurley, Jr.,* for Commerce Insurance Company.

BROWN, J. This appeal concerns the proper measure of dam-
ages for loss of use in an unfair claim settlement practices case.

---

[1] Individually and as next friend of Suyin Martinez, Fabiola Martinez, and
Zuriel Martinez.

[2] Glenda Bezares.

[3] Edward Mutti and Mutti Trucking.

Rivera *v.* Commerce Insurance Company.

The litigation began as a tort action that settled on the eve of trial in May, 2008, for the full policy limits of $1 million. After a bench trial of the G. L. c. 93A and c. 176D claims in March, 2010, a judge found that Commerce Insurance Company (Commerce) had failed to conduct a reasonable investigation and to effect a prompt, fair, and equitable settlement once liability was reasonably clear.[4] Based on these violations, the judge, on amended findings, awarded the claimants, Efrain Martinez Rivera, his wife, and his three minor children (collectively, plaintiffs), actual damages in the amount of $55,000 (which, given the extent of Commerce's bad faith, the judge trebled), plus attorney's fees and costs.[5] See G. L. c. 93A, § 9(3) and (4).

On appeal, the plaintiffs challenge two aspects of the damages award. First, they argue that the judge erred by categorically denying their request for certain expenses from the tort phase of the case. Second, they claim that the judge erred by using a six percent interest rate in the damages calculus. We conclude that any reasonable tort-related litigation expenses incurred as a foreseeable result of Commerce's c. 93A violations were compensable as actual damages. We find no abuse of discretion in the judge's choice of interest rate. Accordingly, we affirm in part, vacate in part, and remand the case to the Superior Court for further proceedings consistent with this opinion.[6]

The underlying facts derived from the judge's findings are no longer in dispute. On August 13, 2003, a dump truck operated

[4]The unfair claim settlement practices claims were added to the tort action by amended complaint. In accordance with common Superior Court practice, a judge severed those claims and stayed them pending resolution of the tort action.

[5]Attorney's fees, costs, and prejudgment interest on the single damages awarded under c. 93A are not in issue in this appeal. The plaintiffs properly did not seek attorney's fees incurred in connection with the tort phase of this action, which was conducted on a contingency fee basis. See *Miller* v. *Risk Mgmt. Foundation of the Harvard Med. Insts., Inc.*, 36 Mass. App. Ct. 411, 421 (1994).

[6]The plaintiffs' sole notice of appeal was filed prematurely, prior to the entry of the judgment on amended finding. In light of the absence of prejudice to Commerce from the procedural misstep and the full briefing, we proceed to a consideration of the merits. See *Swampscott Educ. Assn.* v. *Swampscott*, 391 Mass. 864, 865-866 (1984); *Matter of a Care & Protection Summons*, 437 Mass. 224, 231 n.14 (2002); *Morgan* v. *Evans*, 39 Mass. App. Ct. 465, 467 n.4 (1995). Commerce has elected not to pursue a cross appeal.

by Commerce's insured struck Rivera's vehicle head-on. At the time, Rivera was returning from his job as a laborer. Within nine days, Commerce had concluded that the accident was solely the fault of its insured.

A long medical course followed for Rivera involving multiple surgeries, medical procedures, and therapy. During this time period, the plaintiffs' attorney provided Commerce with updated information about Rivera's status, his inability to work, and copies of his mounting medical bills. On August 7, 2006, the plaintiffs filed this action in order to avoid any statute of limitations issues. In December, 2006, the plaintiffs' attorney offered to settle for the full policy limits. Commerce declined to make any settlement offer.

On June 4, 2007, in response to the plaintiffs' c. 93A demand letter, Commerce made (what the judge determined to be) a bad faith, unreasonable settlement offer of $340,000.[7] The judge offered this scathing indictment of Commerce's claims adjustor: "[Michael] Hall decided . . . to 'see no evil, hear no evil, and speak no evil.' Rather than conduct a reasonable investigation, as required by law, Hall was quite prepared to cherry-pick his facts, ignore the unfavorable aspects of [his medical expert's] report and his own counsel's requests for a further investigation, in order to justify the lowest offer he could. In essence Hall was willing to chance a deliberate violation of the statute, in the hope that the plaintiffs' financial straits would compel them to accept an offer of settlement far less than reasonably commensurate with Rivera's injuries."

On May 6, 2008, shortly before trial, Commerce offered to settle for the policy limits. Two days later, the plaintiffs accepted the offer and the tort case settled.

In this factual scenario, economic damages consist of lost interest on the amount wrongfully withheld by the insurer in violation of c. 93A for the period of the unlawful delay.[8] See *Bertassi* v. *Allstate Ins. Co.,* 402 Mass. 366, 372-373 (1988);

[7]The judge found that a reasonable settlement offer would have been the policy limit of $1 million.

[8]A different rule applies where the underlying claim resolves by judgment vis-à-vis a settlement. See *R.W. Granger & Sons* v. *J & S Insulation, Inc.,* 435 Mass. 66, 82-83 & n.21 (2001).

*Clegg* v. *Butler*, 424 Mass. 413, 423-424 (1997). See also *Rhodes* v. *AIG Domestic Claims, Inc.*, 461 Mass. 486, 497-498 (2012). Actual damages under G. L. c. 93A, § 9(3), also include "all losses which were the foreseeable consequences of the defendant's unfair or deceptive act or practice." *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. 85, 101 (1983). Accord *Hopkins* v. *Liberty Mut. Ins. Co.*, 434 Mass. 556, 566-567 (2001); *Yeagle* v. *Aetna Cas. & Sur. Co.*, 42 Mass. App. Ct. 650, 654 (1997). The claimants must establish a causal connection between the insurer's wrongful conduct and the injury sustained. See *Rhodes* v. *AIG Domestic Claims, Inc.*, 461 Mass. at 496-497.

Here, based on his reading of *Miller* v. *Risk Mgmt. Foundation of the Harvard Med. Insts., Inc.*, 36 Mass. App. Ct. 411 (1994), the judge ruled that the plaintiffs had no right to recoup any tort-related litigation expenses as matter of law.[9] We think *Miller* actually supports the inclusion of expenses as an element of actual damages under c. 93A.

In *Miller*, where the tort and c. 93A claims were tried consecutively in separate actions, the trial judge found in the c. 93A action that the entire expense of trying the tort action was a foreseeable consequence of the defendant's unfair or deceptive act or practice (its protracted delay in settling the tort case), and recoverable under c. 93A. See *id.* at 421. This court held that while the attorney's fee component could not stand, the plaintiffs were entitled to recover the uncompensated tort-related expenses and disbursements incurred and not included in the underlying malpractice judgment. See *ibid.* Applying *DiMarzo* and *Miller* here, we conclude that the plaintiffs may be entitled to reasonable tort-related expenses and disbursements caused by the bad faith delay. The question whether the causal connection was established is one of fact. See *DiMarzo* v. *American Mut. Ins. Co.*, 389 Mass. at 101. By agreement, no evidence was taken on the appropriateness and reasonableness of these expenses and

---

[9]The plaintiffs seek $27,810.81 in litigation expenses in pursuit of the tort claims incurred between June 7, 2007, and May 8, 2008. The expenses sought include fees for the certification of medical records, preparation of trial exhibits, and a videotaped deposition of an expert witness. Pursuant to their contingency fee agreement with their attorney, the plaintiffs were personally liable for these expenses.

disbursements. A remand for an evidentiary hearing on these factual issues is required.

The plaintiffs also claim they are entitled to twelve percent interest. The plaintiffs were entitled to a "fair rate" of interest on the amount wrongfully withheld by Commerce. See *Bertassi* v. *Allstate Ins. Co.,* 402 Mass. at 373.

The plaintiffs' attorney conceded that the interest rate used in the loss of use calculus is reviewed for abuse of discretion. See *Schwartz* v. *Rose,* 418 Mass. 41, 48 n.7 (1994). Here, the judge found that the funds wrongfully withheld by Commerce could have been invested by the plaintiffs in low-risk, conservative investments returning a rate of six percent for the eleven-month period. The plaintiffs have failed to direct us to any authority requiring the use of the twelve percent rate as matter of law.[10] In light of prevailing market conditions, we cannot fairly say that the selection of six percent as the fair rate was an abuse of discretion. See *Greelish* v. *Drew,* 35 Mass. App. Ct. 541, 545 (1993) (characterizing actual damages in loss of use cases as "the amount of interest which could have been earned").

The award of actual damages in the judgment on amended finding is vacated, and the matter is remanded for further proceedings consistent with this opinion. The remaining portion of the judgment on amended finding is affirmed.

*So ordered.*

---

[10]Our canvassing of the case law reveals various interest rates used by factfinders ranging from five to twelve percent.