NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

14-P-430                                        Appeals Court

ROBERT CHIULLI  vs.  LIBERTY MUTUAL INSURANCE, INC., & another.[1]


No. 14-P-430.

Suffolk.     October 1, 2014. - April 2, 2015.

Present:  Rapoza, C.J., Katzmann, & Wolohojian, JJ.


"Anti-SLAPP" Statute.  Constitutional Law, Right to petition
     government.  Practice, Civil, Motion to dismiss,
     Interlocutory appeal.  Consumer Protection Act, Unfair or
     deceptive act, Insurance.  Insurance, Unfair act or
     practice.  Statute, Construction.



     Civil action commenced in the Superior Court Department on
March 18, 2013.

     A special motion to dismiss was heard by Frances A.
McIntyre, J.


     Myles W. McDonough for the defendant.
     Andrew M. Abraham (Thomas C. Thorpe with him) for the
plaintiff.


     KATZMANN, J.  The defendant, Liberty Mutual Insurance, Inc.

(Liberty), appeals from the denial by a Superior Court judge of

_____

     [1] Everett Re Group, Ltd.  Everett is not a party to this
appeal.

a special motion to dismiss pursuant to G. L. c. 231, § 59H, the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute, enacted to protect the constitutional rights of ordinary citizens to petition the government to redress their grievances.[2]  The plaintiff, Robert Chiulli, having secured a large jury verdict against Liberty's insured, filed the instant lawsuit alleging that the defendant had violated G. L. c. 93A and G. L. c. 176D by engaging in unfair and deceptive settlement practices, chiefly by refusing to provide Chiulli with a reasonable settlement offer once the insured's liability became reasonably clear.  Liberty argues that its pursuit of a jury trial on behalf of its insured is protected petitioning activity such that Chiulli's complaint should be dismissed as "a retaliatory and punitive attack upon Liberty's petitioning conduct."  Liberty urges that its actions are protected by petitioning immunity where "genuine issues of material fact

---

[2] "'[A] party's exercise of its right of petition' shall mean any written or oral statement made before or submitted to a legislative, executive, or judicial body, or any other governmental proceeding; any written or oral statement made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other governmental proceeding; any statement reasonably likely to encourage consideration or review of an issue by a legislative, executive, or judicial body or any other governmental proceeding; any statement reasonably likely to enlist public participation in an effort to effect such consideration; or any other statement falling within constitutional protection of the right to petition government."  G. L. c. 231, § 59H, inserted by St. 1994, c. 283, § 1.

existed in the underlying action against the insured." Finally, it argues that application of c. 93A and c. 176D against it is an unconstitutional infringement of its State and Federal rights to a jury trial. It contends that c. 176D's requirement that an insurer make a reasonable offer of settlement when liability is reasonably clear is the equivalent of a requirement that it forgo a jury trial and settle a tort action when there are disputes about its insured's liability. We conclude that Liberty is not entitled here to the protections of the anti-SLAPP statute and that Liberty's deployment of that statute would eviscerate the consumer protections embodied in c. 176D. We thus affirm the denial of its special motion to dismiss.

Background. For background, we look first to Chiulli's underlying complaint that triggered the lawsuit Liberty claims should be dismissed under the anti-SLAPP statute, while also noting other certain events relevant to Liberty's special motion to dismiss. In the underlying complaint, Chiulli alleged that on June 20, 2008, he was severely injured following an altercation at Sonsie Restaurant (Sonsie) on Newbury Street in Boston.[3] As a result of the altercation, Chiulli fractured his skull and was in a coma for approximately three months. He

---

[3] Sonsie's corporate entity is Newbury Fine Dining, Inc., and The Lyons Group, Ltd., provided managerial services to Sonsie. We will refer to them collectively as Sonsie or the insured. Liberty was the primary insurer of both corporations for the periods of time relevant to the lawsuit.

suffered a traumatic brain injury. The altercation had developed between two groups of men at the bar in Sonsie. The bartenders witnessed heated exchanges between the two groups but did not remove the parties from the bar. The employees of Sonsie contended that Chiulli started the fight, and provided depositions in which they stated that they were not trained on the safety rules related to liquor licenses, and that they suspected a fight would occur between the two parties but took no action to prevent it. Surveillance footage also suggested that Sonsie ignored safety procedures aimed at preventing fights.

Chiulli filed suit in Superior Court against Sonsie and three individuals involved in the altercation, and the case was removed to the United States District Court for the District of Massachusetts. On June 21, 2010, Chiulli sent a formal demand letter to Liberty, complete with pertinent medical bills and reports. He alleged that damages became reasonably clear upon receipt of the medical bills. Liberty did not make any settlement offer before the trial in October of 2012. In addition to Chiulli's medical expenses, his traumatic brain injury has resulted in permanent disability, thereby causing significant reduction to his future earning capacity. The undisputed medical expenses were $661,928, and both parties had experts determine lost future earnings, arriving at the

differing amounts of $413,532 and $1,589,949.  In short, it was undisputed that Chiulli suffered at least $1,075,460 in medical expenses and lost earning capacity.  During trial, Liberty offered to settle for $150,000.  On November 19, 2012, the Federal jury found Sonsie to be ninety percent liable; Chiulli (and another individual involved in the fight) were each found five percent liable.[4]  The Federal jury awarded Chiulli damages of $4,494,665.83.  After completion of trial, Liberty moved for judgment as a matter of law and for a new trial.  The Federal case settled while posttrial motions were pending.

Shortly thereafter, Chuilli sent formal demand letters to Liberty pursuant to G. L. c. 93A and G. L. c. 176D.  Liberty denied the allegations in the letter, and Chiulli filed a complaint in Superior Court, alleging that Liberty failed to offer a reasonable settlement when its liability became reasonably clear, which was long before trial.  Liberty filed a motion to dismiss the action pursuant to Mass.R.Civ.P. 12(b)(6), 365 Mass. 754 (1974), and G. L. c. 231, § 59H.  The judge denied the motion by written order.  As to the anti-SLAPP aspect of the

---

[4] The jury apportioned fault as follows:  Newbury Fine Dining, Inc. -- forty-five percent; The Lyons Group Ltd. -- forty-five percent; Chiulli -- five percent; and Garrett Rease (another individual involved in the fight) -- five percent.

motion,[5] she ruled that Liberty's reliance on the statute was misplaced, as Chiulli's claims were premised on Liberty's failure to make a reasonable offer of settlement, not on its decision to exercise its right to a jury trial on behalf of its insured. She concluded in this regard:

> "Liberty provides no authority for its argument that an insurer is entitled to relief under the anti-SLAPP statute where it has brought a case to trial, thereby exercising its right to petition the government for relief. Because Chiulli's claims are not premised upon [Liberty's] 'petitioning activities,' but instead [Liberty's] alleged unfair settlement practices, [Liberty's] special motion to dismiss under G. L. c. 231, § 59H must be denied."

Liberty filed a notice of interlocutory appeal pursuant to "the doctrine of present execution in light of the suit immunity afforded to Liberty by reason of its exercise of the right of petition under the United States and Massachusetts Constitutions, the exercise of its sacred right to jury trial under the Massachusetts Constitution and cognate rights under the United States Constitution, and under the provisions of G. L. c. 231, § 59H."

Discussion. 1. As a preliminary matter, we must determine the issues properly before us in this interlocutory appeal. There can be no dispute that insofar as Liberty is appealing the denial of its motion to dismiss pursuant to the anti-SLAPP statute, we have jurisdiction under the doctrine of present

---

[5] The judge also denied the motion premised on rule 12(b)(6). That aspect of the motion is not before us.

execution to consider the arguments based on c. 231, § 59H. See

Fabre v. Walton, 436 Mass. 517, 521-522 (2002) (Fabre); Benoit

v. Frederickson, 454 Mass. 148, 151-152 (2009) (Benoit) ("the

doctrine of present execution applies to the denial of a special

motion to dismiss pursuant to the anti-SLAPP statute, because

. . . the denial of a special motion to dismiss interferes with

rights in a way that cannot be remedied on appeal from the final

judgment"). "The protections afforded by the anti-SLAPP statute

against the harassment and burdens of litigation are in large

measure lost if the petitioner is forced to litigate a case to

its conclusion before obtaining a definitive judgment through

the appellate process." Benoit, supra at 152, quoting from

Fabre, supra at 521.

Liberty, however, has presented us with no persuasive

authority for the contention that it is appropriate for us to

also now consider as an interlocutory matter its broader

constitutional argument that c. 176D violates the right to jury

trial. See Benoit, supra at 151, quoting from Elles v. Zoning

Bd. of Appeals of Quincy, 450 Mass. 671, 673-674 (2008) ("As a

general rule, an aggrieved litigant cannot as a matter of right

pursue an immediate appeal from an interlocutory order unless a

statute or rule authorizes it." See also Brum v. Dartmouth, 428

Mass. 684, 688 (1999) (noting distinction between immunity from

liability defense and immunity from suit defense, and that only

orders denying immunity from suit enjoy benefit of present execution rule). In sum, all that is before us is so much of the Superior Court judge's order as denies Liberty's motion to dismiss on anti-SLAPP grounds.

2. We next consider whether Liberty has met its burden of showing that it is entitled to the protection of c. 231, § 59H. Under the "well-established" two-part "burden-shifting test," Hanover v. New England Regional Council of Carpenters, 467 Mass. 587, 595 (2014) (Hanover), the special movant who "asserts" protection for its petitioning activities under G. L. c. 231, § 59H, "would have to make a threshold showing through the pleadings and affidavits that the claims against it are 'based on' the petitioning activities alone and have no substantial basis other than or in addition to the petitioning activities." Duracraft Corp. v. Holmes Prods. Corp., 427 Mass. 156, 167-168 (1998) (Duracraft). See Maxwell v. AIG Domestic Claims, Inc., 72 Mass. App. Ct. 685, 695 (2008) (Maxwell) (addressing "petitioning activity" as implicated by special motion to dismiss by insurer facing claims; in determining that insurer had not met its burden under first prong, court held that "fact that some petitioning activity is implicated is not enough where, as here, the root of the claims [the investigation] is nonpetitioning"). If the moving party fails to meet this burden, the judge must deny the special motion. See Duracraft,

427 Mass. at 165. However, should the moving party meet its burden, the burden then shifts to the nonmoving party to demonstrate by a preponderance of the evidence that the moving party's petitioning activities were "devoid of any reasonable factual support or any arguable basis in law" and, further, that the petitioning activities caused actual injury. Ibid., quoting from G. L. c. 231, § 59H. See Benoit, 454 Mass. at 152-153. We agree with the judge that Liberty did not met its threshold burden of showing that Chiulli based his claims solely on Liberty's petitioning activities. As is clear from this complaint, as in Maxwell, supra at 694, Chiulli's claims are based fundamentally on Liberty's failure to effectuate prompt, fair, and equitable settlement of his claim. That basis suffices to defeat Liberty's special motion to dismiss. See id. at 695. See also Wenger v. Aceto, 451 Mass. 1, 5 (2008).

3. Even if the matters surrounding the underlying lawsuit amounted to petitioning activity, we note that there is merit to Chiulli's claim that Liberty has not met its burden to support standing to bring a special motion to dismiss under the anti-SLAPP statute.[6]

---

[6] In so concluding, however, we are not persuaded by Chiulli's contention that Liberty cannot seek the protections of the anti-SLAPP statute simply because it was not a named party to the underlying tort action and, in contrast to Sonsie, had not petitioned the court in the Federal jury trial. This argument has been rejected by the Supreme Judicial Court, which

The record here contains no proof of direct action by Liberty with regard to the underlying trial. Indeed, even if there were proof in the record (which there was not) that Liberty chose counsel for the insured or paid for such counsel, such evidence would merely illustrate Liberty's contractual relationship with its insured. Something more than a "mere contractual connection" to petitioning activity is required to establish standing. Kobrin v. Gastfriend, 443 Mass. 327, 338 (2005). Contrast Hanover, supra at 592-593 (though carpenters'

---

held that "[c]onstitutional petitioning activity for the purposes of the anti-SLAPP statute is not limited to being a named party in litigation, but rather includes activities such as 'writing to government officials, attending public hearings, testifying before government bodies, circulating petitions for signature, lobbying for legislation, . . . filing agency protests or appeals, being parties in law-reform lawsuits, and engaging in peaceful boycotts and demonstration.'" Hanover, 467 Mass. at 590-591, quoting from Duracraft, 427 Mass. at 161-162. Petitioning activity involves statements made to the government, the most relevant here being "any statement reasonably likely to encourage consideration or review of an issue by a . . . judicial body." G. L. c. 231, § 59H. "[A] party cannot exercise its right of petition without making a 'statement' designed 'to influence, inform, or at the very least, reach governmental bodies -- either directly or indirectly.'" Marabello v. Boston Bark Corp., 463 Mass. 394, 399 (2012), quoting from North Am. Expositions Co. Ltd. Partnership v. Corcoran, 452 Mass. 852, 862 (2009). Support of statements seeking to redress a grievance or to petition the government for relief can give standing to bring an anti-SLAPP special motion to dismiss to those who are not named parties to an underlying lawsuit. Hanover, 467 Mass. at 593-594. "[T]here is no statutory requirement that petitioning parties directly commence or initiate proceedings[, but] the statute requires that the protected party have more than a mere contractual connection to . . . the petitioning activity." Kobrin v. Gastfriend, 443 Mass. 327, 338 (2005).

professional association was not a named party to taxpayer litigation seeking judicial review of purported fraud by town, its heavy involvement in "commencement and maintenance of the action" "brought to seek redress against the government," "providing legal counsel and advice to the taxpayers," and "enlisting the taxpayers . . . to encourage consideration by the courts and enlist the participation of the public," falls within anti-SLAPP statute's scope of protected petitioning activities). Consequently, even if Liberty had demonstrated its contractual connection to the underlying suit, it cannot be said that it established standing.

4. Finally, our analysis in this case of the interplay between c. 176D and c. 231, § 59H, is informed by principles of statutory interpretation and the basic tenet that statutes should be read harmoniously. General Laws c. 176D, entitled "Unfair Methods of Competition and Unfair and Deceptive Practices in the Business of Insurance," was enacted in 1972 to protect consumers. The statute proscribes certain acts or omissions that, if committed by an insurer, constitute violation of the statute. The relevant prohibited acts here include "[f]ailing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear." G. L. c. 176D, § 3(9)(f), inserted by St. 1972, c. 543, § 1. General Laws c. 176D, § 3(9), serves the interests of both the

claimant and the insured.  See <u>Gore</u> v. <u>Arbella Mut. Ins. Co</u>., 77 Mass. App. Ct. 518, 525 (2010) (<u>Gore</u>).  It was "enacted to encourage the settlement of insurance claims . . . and discourage insurers from forcing claimants into unnecessary litigation to obtain relief."  <u>Clegg</u> v. <u>Butler</u>, 424 Mass. 413, 419 (1997) (<u>Clegg</u>).  The purpose of G. L. c. 176D, § 3, is to "remedy a host of possible violations in the insurance industry and to subject insurers committing violations to the remedies available to an injured party under G. L. c. 93A."  <u>Hopkins</u> v. <u>Liberty Mut. Ins. Co</u>., 434 Mass. 556, 562 (2001).  See <u>Gore</u>, <u>supra</u> at 523, quoting from <u>Bolden</u> v. <u>O'Connor Café of Worcester, Inc</u>., 50 Mass. App. Ct. 56, 59 n.8 (2000) ("Those claiming injury by virtue of an insurance practice prohibited by G. L. c. 176D, § 3[9][<u>f</u>], may sue under G. L. c. 93A").  The statute is used to "penalize insurers who unreasonably and unfairly force claimants into litigation by wrongfully withholding insurance proceeds."  <u>Clegg</u>, <u>supra</u> at 425.  An insurer is only required to make a settlement offer when liability is reasonably clear.  The inquiry may turn on what the insurer knew on the relevant date to warrant the complainant's conclusion of reasonably clear liability.  See <u>Van Dyke</u> v. <u>St. Paul Fire & Marine Ins. Co</u>., 388 Mass. 671, 677 (1983).  If it is shown that liability was not reasonably clear, the refusal to settle would not violate G. L. c. 176D, § 3.  <u>Ibid</u>.

General Laws c. 231, § 59H, "was enacted by the Legislature [in 1994] to provide a quick remedy for those citizens targeted by frivolous lawsuits based on their government petitioning activities."  Kobrin, 443 Mass. at 331.  "SLAPP suits have been characterized as 'generally meritless suits brought by large private interests to deter common citizens from exercising their political or legal rights or to punish them from doing so.'"  Plante v. Wylie, 63 Mass. App. Ct. 151, 155-156 (2005) (Plante), quoting from Duracraft, 427 Mass. at 161.  "The statute is designed to deter lawsuits filed to intimidate citizens from legitimately petitioning the government for redress of grievances and to provide a mechanism for the prompt dismissal of such lawsuits before the petitioning party has been forced to incur significant costs of defense."  Plante, supra at 156-157.

To permit an insurance company to use an anti-SLAPP defense to defeat c. 176D actions whenever an insurer has opted to try the underlying tort action would effectively gut c. 176D.  As the Superior Court judge observed:

> "If this court were to hold that an insurer may always pursue a jury trial when claims are made against its clients, and subsequently be protected from liability under Chapter 176D and 93A by the anti-SLAPP statute, then there would be no recourse for a plaintiff that was unjustly required to litigate a meritorious claim.  This would directly contradict the Legislature's intent in enacting G. L. c. 176D, § 3."

We agree.

We cannot conclude that the Legislature, by enacting c. 231, § 59H, in 1994, intended to revoke the consumer protections afforded by the 1972 enactment of c. 176D.  See Worcester v. College Hill Properties, LLC, 465 Mass. 134, 139 (2013) ("Legislature must be assumed to know the preexisting law").  See also Alliance to Protect Nantucket Sound, Inc. v. Energy Facilities Siting Bd., 457 Mass. 663, 673 (2010) (when two statutes control, they should be "read together, giving meaning and purpose to both").  "When construing two or more statutes together, we are loath to find that a prior statute has been superseded in whole or in part in the absence of express words to that effect or of clear implication."  Id. at 673 (quotation omitted).  Here, we interpret the statutes such that G. L. c. 231, § 59H, does not supersede G. L. c. 176D, § 3, because there are no express words that demonstrate such legislative intent.  Furthermore, as the Supreme Judicial Court has observed regarding the scope of c. 231, § 59H, even though a matter may be within the letter of the statute, it may not come within its spirit if to include the matter within the statute's purview "would require a radical change in established public policy or in the existing law and the act does not manifest any intent that such a change should be effected."  Duracraft, supra at 167, quoting from Commissioner of Corps. & Taxn. v. Dalton, 304

Mass. 147, 150 (1939).  Allowing an insurer to always pursue a jury trial whenever its insureds are sued, even when its liability is reasonably clear, would effectively eviscerate G. L. c. 176D, requiring an unintended "radical change."  We thus reject Liberty's argument that the anti-SLAPP statute can be invoked here to dismiss the c. 176D and c. 93A complaint.

<u>Order denying special motion to dismiss affirmed</u>.