NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

18-P-1288                                    Appeals Court

ROBERT CHIULLI  vs.  LIBERTY MUTUAL INSURANCE, INC., & another.[1]

No. 18-P-1288.

Suffolk.    November 12, 2019. – April 2, 2020.

Present: Meade, Maldonado, & Massing, JJ.


Consumer Protection Act, Insurance, Offer of settlement, Unfair
    act or practice, Damages. Insurance, Settlement of claim,
    Unfair act or practice. Damages, Consumer protection case.
    Statute, Construction.


Civil action commenced in the Superior Court Department on March 18, 2013.

Following review by this court, 87 Mass. App. Ct. 229 (2015), the case was heard by Rosemary Connolly, J.


Andrew M. Abraham (Martin R. Sabounjian also present) for the plaintiff.
Myles W. McDonough (Christopher M. Reilly also present) for the defendant.


MASSING, J. This case, involving unfair insurance claim

settlement practices, see G. L. c. 176D, § 3 (9), began with an

---

[1] Everest Re Group, Ltd. Everest is not a party to this appeal.

argument over a barstool at a restaurant on Newbury Street in Boston. The argument simmered over the evening and spilled onto the street, culminating in an exchange of blows that left the plaintiff, Robert Chiulli, with a traumatic brain injury. Two lawsuits followed. In the first case, which was tried in the United States District Court for the District of Massachusetts (Federal court case), a jury concluded that the operator of the restaurant, Newbury Fine Dining, Inc., doing business as Sonsie (Sonsie), and an associated entity, Lyons Group, Ltd. (Lyons Group), were each forty-five percent at fault for Chiulli's injuries and awarded compensatory damages of approximately $4.5 million. In the second case, which was tried jury-waived in the Superior Court and is the subject of this appeal (State court case), Chiulli asserted a G. L. c. 93A claim against Sonsie's and Lyons Group's insurer, defendant Liberty Mutual Insurance, Inc. (Liberty Mutual), for its failure to effectuate a prompt, fair, and equitable settlement of the Federal court case once liability had become reasonably clear. See G. L. c. 176D, § 3 (9) (f).[2] The trial judge found that liability became

---

[2] In the early stages of the State court case, Liberty Mutual filed a special motion to dismiss under G. L. c. 231, § 59H, the anti-SLAPP (Strategic Lawsuit Against Public Participation) statute. A Superior Court judge denied the motion, Liberty Mutual appealed, and we affirmed the order denying the motion. See Chiulli v. Liberty Mut. Ins., Inc., 87 Mass. App. Ct. 229 (2015).

reasonably clear after closing arguments in the Federal court case, that Liberty Mutual violated c. 93A from that time until six weeks later, and that Liberty Mutual's violation was not willful or knowing. The trial judge awarded Chiulli damages of $25, see G. L. c. 93A, § 9 (3), plus attorney's fees and costs. Both parties appeal. We affirm in part and reverse in part.

Background. 1. The physical altercation. While the precise events that led to Chiulli's injury have been fiercely contested, no one disputes the following facts for purposes of this appeal. One evening in June 2008, Chiulli went to Sonsie with a group of friends. At some point in the evening, Jeffrey Reiman sat on a barstool that had been previously occupied by someone in Chiulli's group, prompting a heated argument between Chiulli's group and Reiman. A bartender overheard the argument and summoned his manager, Ivan Daskalov, who spoke with Chiulli's group and Reiman and also asked the doorman to keep an eye on them. Reiman moved to a different barstool.

Once Chiulli's group and Reiman were separated, Reiman spoke by telephone with his friend, Victor Torza, who came to Sonsie within minutes. Another friend, Garret Rease, joined Reiman and Torza. Torza attempted to approach Chiulli's group but was intercepted by Sonsie's manager, Daskalov, who continued to separate the groups but permitted them to remain at the restaurant. Shortly thereafter, Reiman approached Chiulli's

group, said something, and walked out of the restaurant, followed directly by Daskalov, then Chiulli's group, and then Torza and Rease. A fight broke out. While the parties dispute who threw the first punch, and in particular whether it was Chiulli, the fight ended when Rease knocked Chiulli unconscious. Chiulli suffered a traumatic brain injury that required him to relearn basic daily living skills, and he incurred medical bills in excess of $600,000.

In the Federal court case, Chiulli asserted negligence claims against Reiman, Torza, Rease, Sonsie, and Lyons Group.[3] Chiulli's theory of the case, which he presented in part through expert opinion testimony, was that Sonsie and Lyons Group engaged in negligent security practices by failing to remove Reiman and his friends, who were acting in a disruptive fashion, and by failing to ensure that the sparring factions did not leave the restaurant together. Although neither Sonsie nor Lyons Group offered its own expert witness, they nonetheless took the position that they had reasonably responded to the barstool incident and that Chiulli bore ultimate responsibility for throwing the first punch. After a three-week trial, the jury largely agreed with Chiulli and, on November 19, 2012,

_____

[3] Chiulli initially filed his complaint in the Superior Court; the case was removed to the United States District Court for the District of Massachusetts on Sonsie's motion.

rendered a verdict finding that Sonsie and Lyons Group were each forty-five percent at fault, that Chiulli and Rease were each five percent at fault, and that Chiulli's damages were $4,494,665.83. Acting on Chiulli's motion to amend the judgment and add prejudgment interest, filed on November 21, 2012, the Federal trial judge entered an amended judgment on September 30, 2013, in the amount of $4,501,654.74.[4]

2. The insurance dispute. Sonsie and Lyons Group had liability coverage through two different policies: a policy with Liberty Mutual that provided primary coverage up to a $1 million limit, and a policy with defendant Everest Re Group, Ltd. (Everest) that provided excess coverage. Liberty Mutual was responsible for controlling the defense of the Federal court case -- and thus controlled any settlement with Chiulli -- until Liberty Mutual concluded that its policy limit was exhausted, at which point it was required to tender its policy limit to Everest so that Everest could assume control. Liberty Mutual did not make any settlement offers to Chiulli during the course of the Federal court case, except for one offer of $150,000 during the trial. Liberty Mutual refused to tender its policy

---

[4] The judge reduced the jury's award of damages by five percent, the fault attributed to Chiulli, then added twelve percent prejudgment interest on the amount of Chiulli's past medical expenses.

limit even after the jury reached its verdict awarding Chiulli damages well over the limit.

On December 5, 2012, sixteen days after the verdict in the Federal court case, Chiulli sent a c. 93A demand letter to Liberty Mutual and Everest.  Chiulli alleged that Liberty Mutual and Everest had failed to effectuate a prompt, fair, and equitable settlement of the Federal court case once liability became reasonably clear and requested $5,701,822.25 "to resolve [the Federal court] case, and to avoid further litigation in which [Chiulli] will seek double or treble damages under c. 93A."  By December 27, 2012, Everest was also frustrated by Liberty Mutual's reluctance to settle and sent its own c. 93A letter demanding that Liberty Mutual tender its policy limit plus interest.  Liberty Mutual complied the following day. Around the same time, Chiulli sent a second c. 93A demand letter to Liberty Mutual and Everest.[5]  In that letter, Chiulli clarified that the demand of $5,701,822.25 was to resolve the Federal court case, and that he was seeking $10 million if Liberty Mutual and Everest also wanted a release of his c. 93A claims.  On January 4, 2013, Everest, now in control of

---

[5] The first page of Chiulli's second demand letter was dated December 27, 2012, but the remaining pages were dated December 31, 2012.  Just before receiving this letter on January 2, 2013, Everest made an oral settlement offer to Chiulli in the amount of $5,101,741.

settlement negotiations, sent Chiulli a written offer of $5,507,597.60 to settle the Federal court case. Chiulli accepted the offer and signed a settlement agreement release, which expressly excluded "any and all claims pursuant to G. L. c. 93A et seq. and/or G. L. c. 176D, et seq." On January 30, 2013, Liberty Mutual replied to Chiulli's first demand letter, denying any liability under c. 93A or c. 176D.

Chiulli pursued his c. 93A claim against Liberty Mutual by filing a complaint in the Superior Court, alleging that his damages and Sonsie's and Lyons Group's liability were reasonably clear well before the trial of the Federal court case.[6] Following a jury-waived trial in the Superior Court, the trial judge concluded that liability became reasonably clear on November 16, 2012, after closing arguments in the Federal court case. "[I]ndulging Liberty [Mutual]," the judge found that legitimate questions about Chiulli's culpability and Sonsie's and Lyons Group's duties remained as the trial date in the Federal court case approached. The judge also found that Chiulli had prepared a strong case that, because of negligent security practices, Sonsie and Lyons Group were liable regardless of who threw the first punch -- a theory that Liberty

---

[6] Chiulli also asserted a c. 93A claim against Everest, as to which Everest obtained summary judgment. Chiulli does not press any claim against Everest on appeal.

Mutual "never seemed to really grasp," and that Sonsie and Lyons Group were unprepared to rebut. Going into trial, the defense team reported to Liberty Mutual that Sonsie and Lyons Group had a seventy percent likelihood of prevailing; Liberty Mutual's claims adjuster believed the company's chances were closer to eighty percent. As the trial progressed, the defense team's own estimation of a favorable verdict for their clients dwindled to fifty-five percent. In the judge's view, the defense team and Liberty Mutual did not realistically assess the plaintiff's case and overestimated their own likelihood of success. The judge concluded that "after the last words had been spoken in closing arguments, Liberty [Mutual] knew at that moment all it needed to know," and that "a reasonable insurer could make an objective review of all the evidence as it actually unfolded during the course of the trial" and conclude that liability and damages had become reasonably clear.

The trial judge further found that after the verdict was returned, Liberty Mutual, by its own assessment, knew that success on appeal or in posttrial motions was unlikely. The judge found that Liberty Mutual had information that Chiulli "was in dire need of cash," and that Liberty Mutual decided that threatening an appeal "might take the wind out of [his] sails."[7]

---

[7] A claim note dated November 26, 2012, regarding Liberty Mutual's "post-trial strategy," observed, "The indication has

The judge found that after liability had become reasonably clear, using Chiulli's financial condition "as a negotiating lever," Liberty Mutual "made Chiulli continue to wait over Thanksgiving [and] Christmas," refused to negotiate, and "hoped that the plaintiff's deteriorated financial condition would lead to more favorable settlement terms." Indeed, Liberty Mutual never attempted to settle the case, but finally tendered its policy limit to Everest on December 28, 2012, after Everest threatened legal action.

The trial judge assessed nominal damages of $25, reasoning that Chiulli ultimately suffered no loss of use of money from Liberty Mutual's withholding of a reasonable settlement offer because the ultimate settlement with Everest far exceeded the verdict in the Federal court case. The judge further found that Liberty Mutual's failure to make a prompt, fair, and equitable settlement offer was not willful or knowing. The judge awarded Chiulli his attorney's fees and costs from the day liability became reasonably clear through the trial of the State court case.

---

always been that [Chiulli] is in desperate need of money . . . . It was agreed that when & if he calls that [defense counsel] would feel him out & he would do so by indicating that we are going to go forward w/an appeal. This might take the wind out of his sails."

Discussion. 1. Liberty Mutual's appeal. a. Settlement-offer defense. Liberty Mutual contends that the trial judge erred by failing to apply the settlement-offer defense set forth in G. L. c. 93A, § 9 (3), (4).[8] This defense limits the damages, attorney's fees, and costs that a plaintiff would otherwise be entitled to recover for a violation of c. 93A if the plaintiff rejects a reasonable written offer of settlement made within thirty days of service of a c. 93A demand letter.[9]

Liberty Mutual argues that it is entitled to this defense based on Everest's written settlement offer dated January 3, 2013, which was made to Chiulli within thirty days of his demand

---

[8] In reviewing the parties' arguments, we accept the trial judge's findings of fact unless they are clearly erroneous, but review her conclusions of law de novo. See T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 569 (2010).

[9] General Laws c. 93A, § 9 (3), requires plaintiffs to mail or deliver a written demand letter before filing suit and sets out a defense to damages, with procedural requirements (none of which Liberty Mutual satisfied) for asserting the defense:

> "Any person receiving such a demand for relief who, within thirty days of the mailing or delivery of the demand for relief, makes a written tender of settlement which is rejected by the claimant may, in any subsequent action, file the written tender and an affidavit concerning its rejection and thereby limit any recovery to the relief tendered if the court finds that the relief tendered was reasonable in relation to the injury actually suffered by the petitioner."

Section 9 (4) calls for attorney's fees and costs to be assessed, but also states that attorney's fees and costs "incurred after the rejection of a reasonable written offer of settlement" timely made shall not be awarded.

letters.[10]  Citing <u>Rhodes</u> v. <u>AIG Dom. Claims, Inc</u>., 461 Mass. 486 (2012), Liberty Mutual reasons that because of the relationship between primary and excess insurers, it could not extend its own settlement offer to Chiulli, and that it instead had to tender its policy limit to Everest.  See <u>id</u>. at 505-506 (excess insurer takes over obligation to settle insurance claim once primary insurer tenders its policy limit).  Therefore, Liberty Mutual argues, any written settlement offer made by Everest necessarily included Liberty Mutual's contribution.

The main flaw in Liberty Mutual's reasoning is that it conflates the settlement of two different claims:  Chiulli's underlying claim against Sonsie and Lyons Group in the Federal court case, which Liberty Mutual insured, and the c. 93A claim that Chiulli asserted directly against Liberty Mutual.[11] Settling the underlying insurance claim, even within thirty days

---

[10] Liberty Mutual also asserts that contract principles required Chiulli to drop his c. 93A claims because Everest's verbal settlement offer of $5,101,741 on January 2, 2013, see note 5, <u>supra</u>, constituted acceptance of Chiulli's first demand letter, in which he offered "to drop any 93A claim upon Liberty and Everest's offering any reasonable amount."  We need not discuss the legal merits of this argument, as it lacks a factual basis in the record.  Chiulli's first demand letter requested $5,701,822.25, not "any reasonable settlement offer," to drop his c. 93A claim.

[11] The impediments that arise from the relationship between primary and excess insurers all go to the primary insurer's ability to settle the underlying claim against the insured, not the c. 93A claim asserted directly against the insurer or insurers.

of a c. 93A demand letter, does not necessarily resolve the associated c. 93A claims, as those claims allow a plaintiff to remedy the separate harm caused by the insurer's unfair settlement practices. See Clegg v. Butler, 424 Mass. 413, 419 & n.6 (1997) (recognizing that eventual settlement of underlying claim does not settle or remedy distinct injury from unjust delay in making settlement offer). Because of the distinction between the two types of claims, acceptance of an insurer's tender of payment for an insured claim "does not vitiate a claim under G. L. c. 93A as a matter of course, unless the latter claim has been expressly settled." Auto Flat Car Crushers, Inc. v. Hanover Ins. Co., 469 Mass. 813, 822 (2014).

Chiulli never received a written settlement offer to resolve the c. 93A claim he asserted against Liberty Mutual. In its written settlement offer, Everest offered to settle only "the underlying litigation" against Sonsie and Lyons Group. The release agreement Chiulli signed on January 22, 2013, in connection with the settlement of his claims against Sonsie and Lyons Group specifically excluded his claims under c. 93A and c. 176D. Subsequently, Liberty Mutual itself also responded to Chiulli's c. 93A demand letter without making any offer to settle. In these circumstances, Liberty Mutual may not properly avail itself of the settlement-offer defense to limit its liability for Chiulli's c. 93A claim. We do not suggest that

when an insurer receives a c. 93A demand alleging the failure to effectuate a prompt, fair, and equitable settlement, it may not make a written settlement offer to resolve both the underlying insurance claim and any associated c. 93A claims, or that a reasonable universal settlement offer would not entitle the insurer to the settlement-offer defense. That is simply not what happened here.

b. <u>When liability became reasonably clear</u>. The trial judge determined that Liberty Mutual violated c. 93A[12] because Sonsie's and Lyons Group's liability had become reasonably clear by the time the Federal court case was submitted to the jury, yet Liberty Mutual did not make a reasonable offer to settle Chiulli's claim against Sonsie and Lyons Group, refusing to tender its policy limit until the excess insurer, Everest, insisted. Liberty Mutual contests the judge's conclusion on several grounds.

"Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear" is an unfair claim settlement practice. G. L. c. 176D,

---

[12] Under G. L. c. 93A, § 9 (1), "any person whose rights are affected by another person violating the provisions of clause (9) of section three of chapter one hundred and seventy-six D may bring an action in the superior court . . . for damages." The provisions of G. L. c. 176D, § 3 (9), list numerous acts or omissions of insurers that constitute "[u]nfair claim settlement practices."

§ 3 (9) (f). The standard used to determine whether liability is "reasonably clear" is an objective one that "calls upon the fact finder to determine whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff." Demeo v. State Farm Mut. Auto. Ins. Co., 38 Mass. App. Ct. 955, 956-957 (1995). Accord McLaughlin v. American States Ins. Co., 90 Mass. App. Ct. 22, 29-30 (2016); O'Leary-Alison v. Metropolitan Prop. & Cas. Ins. Co., 52 Mass. App. Ct. 214, 217 (2001). "[T]he question whether and when an insured's liability became reasonably clear is based on an objective assessment of the facts known or available at the time." McLaughlin, supra at 31. Liability is not "reasonably clear" if there is "a legitimate difference of opinion as to the extent of [the insured's] liability," or a "good faith disagreement" over the amount of damages. Bobick v. United States Fid. & Guar. Co., 439 Mass. 652, 660 (2003).

Liberty Mutual takes issue with the above-quoted formulation of the standard in Demeo, which the trial judge cited in her decision. Based on selective quotation of isolated language in other cases, Liberty Mutual argues that an insurer need not make a reasonable settlement offer unless liability is

"plain" and "clear"[13] -- so clear, Liberty Mutual insists, that a plaintiff must be able to demonstrate entitlement to judgment on the issues of liability and damages as a matter of law.

We reject any notion that decisional law has changed the standard under c. 176D, § 3 (9) (f), from "reasonably clear" to "clear," as such an interpretation would be "contrary to the basic tenet of statutory construction that we must strive to give effect to each word of a statute so that no part will be inoperative or superfluous." Ciani v. MacGrath, 481 Mass. 174, 179 (2019). Nor is entitlement to judgment as a matter of law the governing standard.[14] Where, as here, coverage is not in dispute, whether and when the insured's liability and damages

---

[13] For the proposition that liability must be "plain," Liberty Mutual relies on a passing reference in a footnote in a single case, Miller v. Risk Mgt. Found. of the Harvard Med. Insts., Inc., 36 Mass. App. Ct. 411, 422 n.17 (1994), which was clearly meant as a shorthand reference to the standard. Liberty Mutual also cites three instances where decisions refer to liability and damages becoming "clear," omitting the statutory modifier "reasonably." See Bobick, 439 Mass. at 659, quoting Hopkins v. Liberty Mut. Ins. Co., 434 Mass. 556, 566 (2001); Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 67 (2000). Nothing in those cases, read in their entirety, is inconsistent with the Demeo formulation. Indeed, Bolden, supra at 63 n.12, quotes the Demeo formulation as "[t]he test used to determine whether a defendant's liability became 'reasonable clear.'"

[14] For this proposition, Liberty Mutual relies on dicta in a New Jersey case, Pickett v. Lloyd's, 131 N.J. 457, 473 (1993) (liability not reasonably clear where insurer raises good-faith defense based on substantive issue of noncoverage). The case is inapposite, as here there was no dispute as to coverage.

become reasonably clear, which is based on the insurer's assessment of the facts known or available at any given time, is not susceptible of precise legal certainty. Indeed, an insurer's obligation to tender a reasonable settlement offer under c. 176D, § 3 (9) (f), may arise even where triable issues of fact remain. See Bobick, 439 Mass. at 662 ("[A] jury's verdict is not always predictable and may not constitute in all circumstances a definitive measure of reasonableness"). The purpose of c. 176D is to prevent insurers from exercising their superior bargaining power to "forc[e] claimants into unnecessary litigation to obtain relief." Clegg, 424 Mass. at 419. "[W]hat matters in the G. L. c. 93A case is whether the [insurer] reasonably believed that [the insured's] liability was not clear, or was unreasonable in holding that belief." Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 67 (2000). The proposition that an insurer owes no duty to a third-party claimant "until both liability and damages have been determined in an appropriate, legal forum or agreed upon" has been rejected. Clegg, 424 Mass. at 418.

Liberty Mutual further argues that requiring an insurer to settle a claim before liability is established as a matter of law violates the insured's right to a jury trial under the

Seventh Amendment to the United States Constitution,[15] and that the canon of "constitutional avoidance"[16] should guide our interpretation of c. 176D, § 3 (9) (f).  We are not persuaded.  Liberty Mutual was contractually and statutorily required to make an independent assessment of Sonsie's and Lyons Group's liability, provide for their defense, and make a reasonable offer to settle when and if their liability became reasonably clear.  See McLaughlin, 90 Mass. App. Ct. at 31 ("whether and when an insured's liability became reasonably clear is based on an objective assessment of the facts known or available at the time, and is independent of how a jury in a separate trial view the insured's liability"); Bolden, 50 Mass. App. Ct. at 67 (insurer "need only demonstrate that [insured's] liability was not 'reasonably clear' to the [insurer], not to the jury that heard the [underlying] liability case").  We thus agree with the trial judge's conclusion that requiring Liberty Mutual to effectuate a prompt, fair, and equitable settlement of the

---

[15] We note that the Seventh Amendment right to a jury trial in civil cases applies only in Federal court; it is one of the few provisions of the Bill of Rights that has never been held to apply to the States.  See González-Oyarzun v. Caribbean City Bldrs., Inc., 798 F.3d 26, 29 (1st Cir. 2015).

[16] Under the canon of constitutional avoidance, when faced with "competing plausible interpretations of a statutory text," courts avoid the interpretation that "raises serious constitutional doubts."  Clark v. Martinez, 543 U.S. 371, 381 (2005).

Federal court case once liability had become reasonably clear did "not implicate []or offend [Sonsie and Lyons Group's] right to a jury trial in the underlying tort case."

Similarly, given that the insurer's obligation to make a reasonable settlement offer is independent of how a jury might view the question of liability, we reject Liberty Mutual's contention that the trial judge "committed legal error as [she] found 'reasonably clear' liability where the jury split fault among the defendants and the plaintiff."  We have previously rejected the "suggestion that liability of an insured can never be reasonably clear, as [a] matter of law, so long as other potential tortfeasors are apparent."  McLaughlin, 90 Mass. App. Ct. at 31.

c.  Causation.  Liberty Mutual's argument that the trial judge erred in finding that its delay in making a reasonable settlement offer caused Chiulli harm is also without merit. "Where the conduct alleged to violate G. L. c. 93A is an unreasonable delay in settling a claim arising under an insurance policy, we have held that a plaintiff's actual damages generally comprise the interest lost on the money wrongfully withheld by the insurer" (quotation and citation omitted).  Auto Flat Car Crushers, Inc., 469 Mass. at 829.[17]  While, as the trial

_____

[17] Thus, Liberty Mutual's failure to effectuate a prompt settlement caused Chiulli injury even if, as Liberty Mutual

judge noted, the settlement that Chiulli received to resolve the Federal court case offset his loss of use damages, the settlement of the underlying claim did not preclude Chiulli from recovering on his c. 93A claim. See id. at 824 ("To the extent that a plaintiff already has received compensation for its underlying loss prior to the resolution of its G. L. c. 93A claim, such compensation [is] treated as an offset against any damages ultimately awarded, rather than as a bar to recovery").[18]

d. Conclusion with respect to Liberty Mutual's appeal. We have no basis to disturb the trial judge's determination that

_____

argues, the evidence did not support the judge's finding that "Chiulli had to press his counsel to aggressively litigate even after the verdict to pursue his recovery." The fact that Sonsie and Lyons Group may have had nonfrivolous grounds on which to base posttrial motions in the Federal court case does not require the conclusion, as Liberty Mutual contends, that liability was not reasonably clear or that Chiulli was not injured. We are not persuaded by Liberty Mutual's repeated assertion that it prevailed on the only posttrial issue that was litigated in the Federal court case -- the issue of prejudgment interest. That issue was raised in Chiulli's motion to amend the judgment, not in any posttrial motion filed by the defendants.

[18] While loss of the use of funds is the typical measure of damages from the failure to make a prompt offer of settlement, we note that where, as here, the claimant has recovered a judgment on the underlying claim, the entire amount of that judgment (here, $4,501,654.74) is subject to multiplication if the violation is found to be willful and knowing. See Auto Flat Car Crushers, Inc., 469 Mass. at 827-828; Rhodes, 461 Mass. at 498-499; G. L. c. 93A, § 9 (3) ("For the purposes of this chapter, the amount of actual damages to be multiplied by the court shall be the amount of the judgment on all claims arising out of the same and underlying transaction or occurrence").

Sonsie's and Lyons Group's liability were reasonably clear by the time the Federal court case was submitted to the jury,[19] or that Chiulli was injured by Liberty Mutual's unfair insurance settlement practices.

2. Chiulli's appeal. a. Whether the violation was willful or knowing. Chiulli contends that the trial judge erred in concluding that Liberty Mutual's violation was neither willful nor knowing. See G. L. c. 93A, § 9 (3) ("if the court finds for the petitioner, recovery shall be in the amount of actual damages or twenty-five dollars, whichever is greater; or up to three but not less than two times such amount if the court finds that the use or employment of the act or practice was a willful or knowing violation").

To determine whether Liberty Mutual's conduct "rose to the level of a wilful and knowing violation of G. L. c. 93A, § 2, our task is limited to reviewing the legal standard applied to the subsidiary facts found by the judge." Hyannis Anglers Club, Inc. v. Harris Warren Commercial Kitchens, LLC, 91 Mass. App. Ct. 555, 560-561 (2017). However, "where a judge's ultimate findings are inconsistent with [her] subsidiary findings, we

_____

[19] Given Everest's exposure as the excess insurer, its "prompt decision to settle, once [Liberty Mutual] paid its limit, reinforces our determination that the extent of . . . liability was not a matter of serious doubt." Clegg, 424 Mass. at 421 n.8.

shall set aside the ultimate findings." Simon v. Weymouth Agric. & Indus. Soc'y, 389 Mass. 146, 148-149 (1983). See Hyannis Anglers Club, supra at 561 & n.16. Chiulli does not challenge any of the trial judge's subsidiary findings as clearly erroneous, but instead argues that those subsidiary findings compel the conclusion that Liberty Mutual acted in a willful or knowing manner. We agree.

The trial judge found that Liberty Mutual knew it had little chance of success on appeal. Liberty Mutual also knew that Chiulli owed money for his medical bills and was "in dire need of cash." Faced with a $4.5 million verdict, instead of making a reasonable offer to settle, Liberty Mutual decided to take advantage of Chiulli's vulnerable financial condition "in an attempt to leverage a better settlement" for itself. Accordingly, Liberty Mutual embarked on a strategy to threaten an untenable appeal to "take the wind out of [Chiulli's] sails." The judge explicitly found that after liability had become reasonably clear, "Liberty made Chiulli continue to wait over Thanksgiving, over Christmas, forcing him to continue to litigate and to fight to recover his verdict."

The trial judge's subsidiary findings require the conclusion that Liberty Mutual's violation was willful or knowing. "To be wilful or knowing, a violation need not be malicious, but must constitute more than negligence. Within

that range is conduct that is intentionally gainful, . . . or demonstrates a wilful recklessness or conscious, knowing disregard for its likely results" (quotation and citations omitted).  Rass Corp. v. Travelers Cos., 90 Mass. App. Ct. 643, 657 (2016).  Liberty Mutual's conduct, as found by the judge, falls squarely within conduct that is "intentionally gainful": when Liberty Mutual had an obligation to effectuate a prompt, fair, and equitable settlement, it instead made the deliberate choice to exploit Chiulli's financial distress for its own gain.[20]  See Gore v. Arbella Mut. Ins. Co., 77 Mass. App. Ct. 518, 531-533 (2010).  Nothing about this conduct could be described as anything short of willful or knowing.[21]

---

[20] In concluding that Liberty Mutual's violation was not willful or knowing, the trial judge observed, "There was good reason at the outset for Liberty's skepticism about Sonsi[e]'s [and Lyons Group's] liability at least up and until all the evidence at the trial had closed."  The judge's reliance on the period "at the outset" as a basis for concluding that the violation was not willful or knowing focuses on the wrong period of time -- long before the closing arguments in the jury trial, which, the judge found, was the timeframe in which Liberty Mutual's obligation to effectuate a prompt, fair, and equitable settlement was triggered.  It was only after liability became clear that Liberty Mutual engaged, willfully and knowingly, in unfair settlement practices.

[21] Chiulli also argues that he should have been allowed to amend his complaint, which alleged the failure of Liberty Mutual to effectuate a prompt, fair, and equitable settlement once liability had become reasonably clear.  See G. L. c. 176D, § 3 (9) (f).  Chiulli waited until eight years after the incident, after a summary judgment motion had been served in the State court case, to assert a claim based on Liberty Mutual's failure to conduct a reasonable investigation of Sonsie's and

Conclusion. So much of the November 8, 2017, amended judgment as determined that Liberty Mutual's violation of G. L. c. 93A was not willful or knowing is vacated, and the case is remanded to the Superior Court for entry of a finding that Liberty Mutual's violation was willful or knowing, and for a determination whether the amount of the judgment on all claims arising out of this case and the underlying occurrence shall be doubled or tripled under G. L. c. 93A, § 9 (3). In all other respects, the amended judgment of the Superior Court is affirmed.

So ordered.

---

Lyons Group's liability. See G. L. c. 176D, § 3 (9) (d). We discern no abuse of discretion in the denial of Chiulli's motion to amend as untimely. See Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288, 292-293 (1977).